The HOME INDEMNITY COMPANY, on behalf of itself and on behalf of all other persons entitled to share in certain funds received by the United States of America, Internal Revenue Service, from Marvac Industries Corporation in connection with a public improvement known as the BOCES # 3 Special Education School located at Carman Road, Dix Hills, New York, Plaintiff,

v.

Charles H. BRENNAN, District Director, Brooklyn, et al., Defendants.

No. 75 Civ. 4732.

United States District Court, S. D. New York.

Jan. 11, 1977.

Hart & Hume, New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty., New York City, for defendants; William R. Bronner, Asst. U. S. Atty., New York City, of counsel.

## OPINION

KEVIN THOMAS DUFFY, District Judge.

Plaintiff seeks the recovery of monies claimed to have been wrongfully accepted by defendants, the United States, Department of the Treasury, Internal Revenue Service ("IRS") and Charles H. Brennan ("Brennan"), District Director thereof, in satisfaction of certain tax liabilities of Marvac Industries Corporation ("Marvac"), on whose behalf plaintiff acted as surety. Defendants have moved, pursuant to Rule 12(b)(1), F.R.Civ.P., to dismiss the amended complaint for lack of subject matter jurisdiction, or in the alternative, for summary judgment pursuant to Rule 56(b), F.R.Civ.P.[1]

On or about May 8, 1972, Marvac contracted with the Dormitory Authority of the State of New York ("the State") to construct a school to be used by the Board of Cooperative Educational Services No. 3, located on Long Island ("the BOCES # 3 Project"). At the same time, plaintiff, as surety on behalf of Marvac as obligor, issued performance and payment bonds to the State, as obligee, in connection with the BOCES # 3 Project. On March 22, 1973, while the project was under way, the State made a progress payment by check of $104,-562 to Marvac, which check Marvac endorsed over and remitted to the IRS. The IRS apparently accepted the check in payment of payroll taxes incurred by Marvac on the project. The check was cashed and proceeds paid to the IRS. Marvac subsequently defaulted on the construction contract causing plaintiff, pursuant to its surety obligation, to pay out $1,864,000 in com-

---

1. Defendants' contention that the action is barred by the applicable statute of limitations has been withdrawn. Plaintiff's cross-motion for leave to amend the complaint so as to assert jurisdiction over Brennan pursuant to 28 U.S.C. § 1340, consented to by defendants, has been treated as if previously granted.

pleting the BOCES # 3 Project and discharging the claims of subcontractors, laborers and materialmen.

It is plaintiff's contention that, under the New York Lien Law Article 3A,[2] the funds represented by the State check constituted assets of a trust to be held and applied by Marvac for the payment, *inter alia*, of subcontractors, laborers, materialmen and payroll taxes on the BOCES # 3 Project; that some or all of the payroll taxes paid by this check were not incurred in connection with the BOCES # 3 Project; and that defendants were aware of this fact. Plaintiff asserts that Marvac's delivery of the State payment to defendants, in violation of the New York Lien Law, thus constituted a diversion of the trust funds; and, by refusing to honor the claim of trust and return the proceeds on demand, defendants not only converted the funds but also participated in the breach of such trust. As subrogee of the rights of the BOCES # 3 subcontractors, laborers and materialmen whose claims it discharged, plaintiff maintains that it is entitled to recover such trust assets in the hand of Brennan and the IRS.

Under the doctrine of sovereign immunity, the United States may be sued only with its consent. Plaintiff contends that the expression of consent contained in 28 U.S.C. § 1346(a)(1), or alternatively, 28 U.S.C. § 1346(b), permit the instant action against the IRS. Defendants posit, however, that plaintiff is a non-taxpayer seeking to recover for a tort committed in the collection of taxes and, as such, is without the scope of applicable statutory consent.

Essentially, 28 U.S.C. § 1346(a)(1) permits suit against the United States in the district court to recover taxes which have been allegedly wrongfully collected or assessed.[3] The prevailing view is that § 1346(a)(1) authorizes suits by taxpayers only, so that even one with an interest in property levied upon to satisfy another's tax liability is not a taxpayer within the meaning of this section. *Phillips v. United States*, 346 F.2d 999 (2d Cir. 1965); *First National Bank of Emlenton, Pa. v. United States*, 265 F.2d 297 (3rd Cir. 1959); *Mill Factors Corp. v. United States*, 391 F.Supp. 387 (S.D.N.Y.1975); *Ceravolo & Comis, Inc. v. United States*, 266 F.Supp. 215 (N.D.N.Y. 1967). By claiming that assets of the trust of which plaintiff, as subrogee, is the beneficiary were improperly diverted, plaintiff seeks to characterize itself as an "involuntary taxpayer" so as to fit within the broad minority reading of the term "taxpayer" recognized in *Adams v. United States*, 380 F.Supp. 1033 (D.Mont.1974) and *McMahon v. United States*, 172 F.Supp. 490 (D.R.I. 1959).

Several factors cause me to reject this interpretation. *Mill Factors Corp. v. United States, supra,* conceded by plaintiff to be virtually indistinguishable from the instant case, expressly rejected both *Adams* and *McMahon*, 389 F.Supp. at 389 n. 2; and I am not aware of any Court of Appeals case in any circuit which has approved or adopted that minority view. Moreover, a waiver of sovereign immunity is to be strictly construed. *Phillips v. United States*, 346 F.Supp. at 1000; *Hammond-Knowlton v.*

2. New York Lien Law 70 (McKinney 1966) provides in part:

   1. The funds described in this section . . . received by a contractor or under or in connection with . . . a contract for a public improvement in this state . . . shall constitute assets of a trust for the purposes provided in section seventy-one of this chapter.

New York Lien Law 71 (McKinney 1966) provides in part:

   2. The trust assets of which a contractor . . . is trustee shall be held and applied for the following expenditures arising out of . . . public improvement and incurred in the performance of his contract . . . . :

   (a) payment of claims of subcontractors, architects, engineers, surveyors, laborers and materialmen;

   (b) payment of the amount of taxes based on payrolls . . .

3. 28 U.S.C. § 1346(a)(1) provides in part:

   (a) the district courts shall have original jurisdiction, concurrent with the Court of Claims, of:

   (1) any civil action against the United States for the recovery of any internal-revenue tax alleged to have been erroneously or [allegedly] assessed or collected . . .

*United States*, 121 F.2d 192 (2d Cir. 1941). Given the tenuous connection between plaintiff as subrogee and the monies collected from Marvac as tax revenues, I find this an inappropriate case to do violence to that construction. Accordingly, § 1346(a)(1) is an insufficient jurisdictional predicate.

■ Turning to plaintiff's alternative basis, I reach the same result. The Federal Tort Claims Act, 28 U.S.C. § 1346(b) is a waiver of sovereign immunity in certain tort actions against the United States.[4] This waiver, however, is circumscribed by exceptions contained in 28 U.S.C. § 2680. One such exception is 28 U.S.C. § 2680(c), which precludes the applicability of § 1346(b) to "any claim arising in respect of the assessment or collection of any tax . . . ." Plaintiff submits that since it is a non-taxpayer, this exception cannot be a bar to the instant suit against the IRS. I am not aware of any such limitation on the plain language of the statute.[5] See *United States v. Worley*, 213 F.2d 509 (6th Cir. 1954); *Broadway Open Air Theater v. United States*, 208 F.2d 257 (4th Cir. 1953); *Pargament v. Fitzgerald*, 272 F.Supp. 553 (S.D.N.Y.1967), aff'd, 391 F.2d 934 (2d Cir. 1968).

The gravamen of plaintiff's complaint is that it suffered a loss of property as a result of the wrongful act of the IRS in accepting, in payment of unrelated taxes, a check representing trust assets.[6] As such,

it is clearly a "claim arising in respect of the . . . collection" of taxes, since without such collection, no claim would exist.

Since I have determined that § 2680(c) renders § 1346(b) unavailable as a basis for jurisdiction over the IRS, it is unnecessary to reach defendants' other contentions relating to the applicability of the discretionary function exception of 28 U.S.C. § 2680(a), the interference with contract rights exclusion of 28 U.S.C. § 2680(b), and the administrative tort claim filing requirement of 28 U.S.C. § 2675.

■ Plaintiff jurisdictionally bases its claim against Brennan on 28 U.S.C. § 1340. This section grants to district courts "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue . . . ."; it does not, however, constitute an independent waiver of sovereign immunity where applicable. *DeMasters v. Arend*, 313 F.2d 79, 84 (9th Cir. 1963); *Ceravolo & Comis, Inc. v. United States*, 266 F.Supp. at 218.

The Court of Appeals has recently recognized that federal officials sued for actions taken in their official capacity enjoy a qualified immunity in the absence of a lack of good faith and reasonable grounds for such actions. *Black et al. v. United States et al.*, 534 F.2d 524 (2d Cir. 1976); *Economou v. United States Dept. of Agriculture, et al.*, 535 F.2d 688 (2d Cir. 1976). This recogni-

---

4. 28 U.S.C. § 1346(b) provides in part:

   Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, . . . for injury or loss of property . . . caused by the negligen[ce] or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

5. In fact, in the House Committee Report on the Federal Tax Lien Act, reference is made to the rights of third parties in civil actions against the United States.

   Present law is quite limited in the extent to which it takes into account the rights of third

parties in the procedure set out in the law for the collection of taxes from the taxpayer. Under present law, for example, the United States cannot be sued by third parties where its collection activities interfere with their property rights. This includes cases where the Government wrongfully levies on one person's property in attempting to collect from a taxpayer.

Report of the Committee on Ways and Means, House of Representatives, H.R.Rep. No. 1884, 89th Cong., 2d Sess. 27 (1966).

6. Plaintiff has directed the Court's attention to the fact that the check bore the visible notation "CONSTRUCTION FUND—BOCES," which plaintiff claims indicated that the monies represented by the check were trust assets under the New York Lien Law. Plaintiff's Memorandum in Opposition, p. 3.

tion stemmed from the Supreme Court's expansion of liability of this class of defendants in suits brought under 42 U.S.C. § 1983. *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1976); *Scheuer v. Rhoades,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

■ Plaintiff argues that no immunity attaches in this case since Brennan acted outside the scope of his official authority by accepting trust funds, with notice of their nature, for a purpose for which they could not be legally used; that is, in payment of taxes unrelated to the BOCES # 3 Project. In light of the decision in *Black et al. v. United States et al., supra,* I find this assertion untenable.[7]

*Black* was a class action brought against the United States, the Secretary of the Treasury, the Commissioner and District Director Brennan of the IRS and other unknown IRS agents by the owner of an income tax preparation service and his taxpaying clients. The suit arose out of a claim that the defendants were conducting a tax investigation in violation of the plaintiffs' constitutional and statutory rights. The plaintiffs contended that no immunity attached to the actions of the named officials since the allegations of numerous violations sufficed to place those defendants outside of the scope of their authority. The district court summarily concluded, however, that the defendants were being sued solely in their official capacities and, as such, enjoyed an absolute immunity from suit. On appeal, the district court's finding was sustained, notwithstanding the erroneous application of an absolute, rather than a qualified, immunity.

Reasoning from *Black,* plaintiff's bald assertion that Brennan's allegedly wrongful conduct placed him outside the scope of his official authority is insufficient to sustain this position for the purposes of this motion.

It has long been recognized, in analogous context, that mere allegations of wrongful conduct do not necessarily establish *ultra vires* activity on the part of officials. *See, e. g., Larson v. Domestic & Foreign Corp.,* 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949). It is clear that Brennan is being sued because he is the District Director of the IRS, and in charge of a governmental agency responsible for the collection of taxes within which the alleged wrong occurred. It is equally clear that Brennan has the authority to make determinations concerning tax collection without subjecting himself to individual liability. Only the most fanciful construction of the complaint would indicate that the capacity in which plaintiff seeks to hold him liable is other than his official one.

Having concluded that Brennan was acting in his official capacity in this case, the question becomes whether plaintiff has alleged sufficient information to overcome Brennan's qualified immunity from suit in the first instance. In this regard the Court of Appeals in *Black* rejected liability based on motions of *respondeat superior,* and adopted the requirement of suits brought against state officials under 42 U.S.C. § 1983 that the plaintiff allege "defendant's direct and personal responsibility for the purportedly unlawful conduct of his subordinates," *Black et al. v. United States et al.,* 534 F.2d at 527. It is worthy of note that attached as "Exhibit B" to the plaintiff complaint in *Black* was a letter personally signed by District Director Brennan which notified two of the plaintiffs that certain additional information was needed to verify their tax liability. This letter was included as a representative sample of the type of harassment claimed to amount, in volume, to unconstitutional behavior on the part of the defendants in that case. Notwithstanding this indicia of personal involvement, the Court of Appeals, using the § 1983 standard enunciated, found the complaint fatally defective, and confirmed the district court's finding of lack of jurisdiction.

7. I have taken the liberty of obtaining a copy of the record of appeal in the *Black* case to ascertain the allegations and contentions of the parties thereto as an aid to the determination of the sufficiency of plaintiff's allegations on this issue.

In the instant case the sole allegation indicating Brennan's direct and personal involvement is that "Brennan the Internal Revenue Service knew that some or all of the tax liability of Marvac for which payment of the proceeds of [the State check] was made did not arise out of the . . . BOCES # 3 Special Education School . . . " (Complaint ¶ 13). There is no allegation that this awareness was actual and not constructive; the awareness of the IRS, with whom Brennan is coupled, is of necessity the latter. The other allegations pertaining to the issue paint a portrait of *respondeat superior* liability—the claims that Brennan and the IRS "knew or should have known" of the nature of the proceeds of the State check (Complaint ¶ 12) and that Brennan "by his agents and employees" refused, after demand, to refund the proceeds to plaintiff (Complaint ¶ 15). If Brennan's personal participation, by way of letter, was insufficient to support direct and personal responsibility for the allegedly unlawful acts in *Black*, then surely, the summary and nonspecific assertions in the instant complaint are of no more moment. Consequently, in the absence of particularized allegations directed to this issue, plaintiff's complaint is fatally deficient to establish jurisdiction over Brennan.

The result reached renders consideration of defendants' summary judgment motion moot. I note, however, that the Court of Appeals has approved the use of summary judgment to determine the issue of good faith and reasonable grounds for actions taken by federal officials in their official capacities, which is a crucial inquiry in a determination of immunity in a given case. *Economou v. United States Dept. of Agriculture et al., supra.* Had plaintiff's allegations been sufficient to withstand the motion to dismiss, summary judgment would have been appropriate, in any event, to defeat recovery against Brennan.

Plaintiff, in opposing the summary judgment motion, dramatically failed to come forward with even a scintilla of proof on the issue of Brennan's lack of good faith, choosing, instead, to rest upon its mere allegations in contravention of the clear directive of Rule 56(e), F.R.Civ.P. Moreover, the correspondence from various IRS agents offered by plaintiff in support of an issue not reached in this opinion—the filing of a prior administrative claim—undermines plaintiff's claim of conscious wrongdoing on Brennan's part. As the Court of Appeals has stated:

"A party opposing a motion for summary judgment simply cannot make a secret of his evidence until the trial, for in doing so he risks the possibility that there will be no trial. A summary judgment motion is intended to 'smoke out' the facts so that the judge can decide if anything remains to be tried." (citations omitted).

*Economou v. United States Dept. of Agriculture, et al.,* 535 F.2d at 696–97, citing *Donnelly v. Guion,* 467 F.2d 290, 293–94 (2d Cir. 1972). My determination that jurisdiction is lacking in the first instance, however, renders a finding on the outcome of this risk taken by plaintiff irrelevant.

Defendants' motion to dismiss is granted in its entirety. Settle judgment on three days' notice.