**INTERFIRST BANK DALLAS, N.A.,**
**Plaintiff-Appellant,**

v.

**UNITED STATES of America, and**
**Internal Revenue Service,**
**Defendants-Appellees.**

Nos. 84–1412, 84–1571.

United States Court of Appeals,
Fifth Circuit.

Aug. 26, 1985.

---

**39.** *Id.* at 707.

**40.** *See Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663, 685 (1962).

Winstead, McGuire, Sechrest & Minick, J. Maxwell Tucker, Jay J. Madrid, Dallas, Tex., for plaintiff-appellant.

William W. Guild, Glenn L. Archer, Jr., Asst. Atty. Gen., Michael L. Paup, Richard Farber, Gayle P. Miller, Tax Div., Dept. of Justice, Dallas, Tex., for defendants-appellees.

Before GOLDBERG, POLITZ and WILLIAMS, Circuit Judges.

GOLDBERG, Circuit Judge:

This case requires us to apply the hoary and oft-criticized doctrine of sovereign immunity. On November 4, 1982, Interfirst Bank Dallas filed suit against the United States and the Internal Revenue Service alleging that the IRS, in collecting delinquent taxes from the Condor Drilling Company, wrongfully levied upon property in which Interfirst had a perfected security interest. After severing part of Interfirst's claim, the district court dismissed the remaining portion of the claim on the ground that sovereign immunity applied. Because we agree that the government is immune from suit, we affirm.

**I**

■ On April 8, 1981, Interfirst Bank Dallas entered into an agreement with the Condor Holding Company and its wholly-owned subsidiaries ("the Condor Group") under which Interfirst agreed to loan the Condor Group $9,000,000. The loan was secured, in part, by the equipment, drilling rigs, and accounts receivable of the Condor Drilling Company ("Condor"), a member of the Condor Group engaged in the oil and gas drilling business. Interfirst claims that this security interest was perfected by the filing of financing statements with the Texas Secretary of State on April 13, 1981.[1]

In December 1981, the Condor Group defaulted on its initial installment payment to Interfirst of principal and interest. Interfirst gave notice of default on January 29, 1982. By coincidence, on the same day the IRS assessed unpaid employment and withholding taxes against the Condor Drilling Company in the amount of $769,868. According to Interfirst, certain directors and officers of Condor faced the spectre of individual liability for the delinquent taxes, pursuant to 26 U.S.C. § 6672 (1982).

On February 11, 1982, Condor's drilling equipment was liquidated at auction to pay its obligations to Interfirst. Immediately following the auction, however, the IRS served a "Notice of Levy" on the auctioneers to compel payment of Condor's tax assessment, and the auctioneers later surrendered the auction proceeds to the IRS. The IRS also requested that Condor surrender its accounts receivable, including several receivables due from Post Petroleum worth $240,000, and threatened to file a tax lien if the accounts were not surrendered. In response to this request, Condor paid the proceeds of the Post Petroleum receivables to the IRS by endorsing over three cashier's checks from Post; $70,000 was surrendered on March 1, 1982, and $170,000 on March 4.

In the meantime, Interfirst was blissfully unaware of the IRS's collection activities. On February 26, 1982, the Bank served notice on Condor of its intention to foreclose on all collateral, including Condor's accounts receivable from Post Petroleum. The notice indicated that foreclosure was to occur on March 9, 1982. Despite this notice, Condor failed to inform Interfirst that it was surrendering its Post accounts receivable to the IRS and Interfirst did not consent to this transfer.

On March 9, 1982, Condor commenced Chapter 11 bankruptcy proceedings. Interfirst alleges that its claims against Condor exceed the value of Condor's collateral by more than $6,000,000, and that this deficiency remains unpaid.

■ Interfirst brought suit against the government on November 4, 1982, alleging common law conversion and wrongful levy, 26 U.S.C. § 7426, and claiming damages of $438,466. $198,466 of Interfirst's claim was for the proceeds of the auction of Condor's drilling equipment; the remaining $240,000 was for the accounts receivable

---

1. For the purpose of reviewing the government's motion to dismiss, we take as true the facts alleged by Interfirst in its pleadings.

from Post Petroleum. In a memorandum opinion, the district court granted the government's motion to dismiss the claims relating to the accounts receivable on the ground of sovereign immunity. After severing the claim relating to the auction proceeds,[2] the court entered final judgment in favor of the government on the accounts receivable claim. In these consolidated appeals, Interfirst challenges both the district court's non-final order dismissing the accounts receivable claim as well as the resulting final judgment on that claim.[3]

## II

██ Decried as irrational and immoral by some, *see, e.g., Muskopf v. Corning Hospital District,* 55 Cal.2d 211, 11 Cal. Rptr. 89, 359 P.2d 457 (1961) ("an anachronism without rational basis that has existed only by virtue of inertia"), criticized on historical grounds by others, *see* Borchard, *Government Liability in Tort,* 34 Yale L.J. 1, 2–4 (1924), recognized by all to have little doctrinal coherence, the doctrine of sovereign immunity has nonetheless retained the endorsement of the two institutions that matter—the Supreme Court and Congress. The origins of the doctrine in English law are obscure,[4] and its importation to the United States unreasoned.[5] Borchard, *supra,* at 4. However, since its adoption in *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 411–12, 5 L.Ed. 257 (1821), and *Hill v. United States,* 50 U.S. (9 How.) 386, 389, 13 L.Ed. 185 (1850), the doctrine, though occasionally criticized,[6] has been repeatedly upheld by the Supreme Court,[7] and though limited by Congress, has never been waived generally. Therefore, in reviewing suits against the federal government, we must determine initially whether one of the enumerated waivers of sovereign immunity applies. If not, the government is immune from suit and we lack subject matter jurisdiction. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. Sherwood,* 312 U.S. 584, 586–88, 61 S.Ct. 767, 770, 85 L.Ed. 1058 (1941).

In the present case, Interfirst advances three reasons why sovereign immunity does not apply. First, Interfirst contends that its claim falls within the scope, express or implied, of 26 U.S.C. § 7426, which waives immunity in suits by third-party

---

**2.** As a result of the severance, Interfirst's auction proceeds claim, which was subsequently settled, is not before us.

**3.** Interfirst appealed from the district court's memorandum opinion granting the government's motion to dismiss because it was unsure whether this opinion might be deemed a "final order." This appeal was assigned case No. 84–1412. After the district court entered its final judgment, Interfirst filed a second notice of appeal, which was given case No. 84–1571. These appeals have been consolidated because they involve identical parties and issues. Because the first appeal, No. 84–1412, was from an interlocutory order, we dismiss that appeal, *Austin Mun. Sec., Inc. v. National Ass'n of Sec. Dealers,* 757 F.2d 676, 685 (5th Cir.1985); 28 U.S.C. § 1291 (1982), and consider only the second appeal, No. 84–1571.

**4.** Apparently, the doctrine grew out of a perversion of Bracton's maxim, "the King can do no wrong." Originally, this expression meant merely that the King was not privileged to do wrong. Borchard, *supra,* at 2 n. 2. However, it eventually came to mean that the King was incapable of doing wrong. · *Id.* This is perhaps one illustration of the fact that, often, the life of

the law has been neither logic nor experience (Justice Holmes notwithstanding); it has been language. Like the monster of Dr. Frankenstein, language can escape the intent of its creators and have a force of its own.

**5.** The doctrine first received expression in *Cohens v. Virginia,* 19 U.S. (6 Wheat.) 264, 5 L.Ed. 257 (1821), where Chief Justice Marshall, without offering authority or explanation, stated in dictum that "[t]he universally received opinion is, that no suit can be commenced or prosecuted against the United States; that the judiciary act does not authorize such suits." *Id.* at 411–12.

**6.** *See, e.g., Malone v. Bowdoin,* 369 U.S. 643, 652, 82 S.Ct. 980, 986, 8 L.Ed.2d 168 (1962) (Douglas, J., dissenting) (doctrine "more and more out of date"); *Larson v. Domestic & Foreign Commerce Corp.,* 337 U.S. 682, 703, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949) ("may be substance" in the viewpoint that sovereign immunity an "archaic hangover not consonant with modern morality").

**7.** *See, e.g., Ruckelshaus v. Sierra Club,* 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *Lehman v. Nakshian,* 453 U.S. 156, 160–61, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981).

creditors claiming an interest in property that has been wrongfully levied by the IRS. Second, Interfirst argues that its suit is permitted under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674. Finally, Interfirst asserts that the doctrine of sovereign immunity, as it relates to this case, is irrational and should be waived on constitutional grounds. We disagree with all three of these arguments and therefore affirm the district court's dismissal.

## A

Section 110(a) of the Federal Tax Lien Act of 1966, Pub.L. No. 89–719, 80 Stat. 1142 (codified at 26 U.S.C. § 7426(a)(1)), provides in pertinent part:

> If a levy has been made on property ..., any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States. Such action may be brought without regard to whether such property has been surrendered to or sold by the Secretary or his delegate.

Prior to the enactment of this statute, a person claiming an interest in property that was levied upon to satisfy the tax liability of another person had no direct cause of action against the government. 26 U.S.C. § 7426 remedies this situation by allowing creditors to bring actions challenging the lawfulness of governmental levies made against property in which they claim an interest. Interfirst argues that this waiver of sovereign immunity applies in the present case on the ground that the IRS made a levy upon Condor's accounts receivable.[8]

Clearly, the IRS did make a levy upon the proceeds of the February 11 auction of Condor's drilling equipment; it even filed a specific "Notice of Levy" upon the auction-eers to compel payment. For this reason, the court below properly severed Interfirst's claim for the proceeds of the auction, and permitted suit against the government based on this claim. *See supra* note 2. The question before us now is whether Section 7426 also applies to Interfirst's claim regarding Condor's accounts receivable. In contrast to the collection by the IRS of the auction proceeds, the IRS filed no "notice of levy" on Condor to collect the accounts receivable. Although the IRS agent did threaten to impose tax liens on Condor if Condor did not deliver the accounts receivable, ultimately Condor surrendered these accounts voluntarily, without any judicial compulsion.

■ In order for Section 7426 to apply, the IRS must have made an actual "levy" upon the property in question; a threatened levy is insufficient. This is clearly indicated by the legislative history of Section 7426, *see* H.R.Rep. No. 1884, 89th Cong., 2d Sess. 75 (1966–2 Cum.Bull. 869) ("[I]n no case may [an] action be brought prior to the time that the Secretary of the Treasury or his delegate has in fact levied upon the property."), and the courts have so held, *e.g., Nickerson v. United States,* 513 F.2d 31, 33 (1st Cir.1975); *Hamilton National Bank v. United States,* 367 F.Supp. 1110, 1112–13 (E.D.Tenn.1972), *aff'd mem.,* 486 F.2d 1405 (6th Cir.1973); *American Pacific Investment Corp. v. Nash,* 342 F.Supp. 797, 799 (D.N.J.1972). The question thus is whether the IRS's collection activities constituted a constructive levy.

■ A "levy" is defined in 26 U.S.C. § 6331(b) as "the power of distraint and seizure by any means"—a definition which connotes compulsion. *See also Black's Law Dictionary* 816 (5th ed. 1979) ("*Levy.* A seizure. The obtaining of money by legal process through seizure and sale of

---

**8.** Interfirst claims, on the basis of *Slodov v. United States,* 436 U.S. 238, 256–58, 98 S.Ct. 1778, 1790, 56 L.Ed.2d 251 (1978), that its interest in the accounts receivable was superior to the government's, and that the government's levy was therefore wrongful. Because we affirm the district court's holding that the government is immune from suit, we express no opinion on the merits of Interfirst's case.

property."). This is confirmed by the structure of Section 6331 as a whole, which distinguishes between assessment and demand on the one hand and a levy on the other. Under Section 6331, the IRS must first give notice and demand to a taxpayer and may levy upon his property only if the taxpayer neglects or refuses to pay his taxes within ten days. 26 U.S.C. § 6331(a). This distinction would make little sense if assessment, demand, and voluntary payment were tantamount to a levy. It clearly contemplates that a levy is a forcible means of extracting taxes from a recalcitrant taxpayer.[9] Consequently, no levy occurred here, where Condor transferred its accounts receivable to the IRS voluntarily. *See Hamilton National Bank*, 367 F.Supp. at 1113 (holding on similar facts that no levy occurred). *But cf. United Pacific Insurance Co. v. United States*, 320 F.Supp. 450, 451 (D.Or.1970) (holding that notice of lien equivalent to notice of levy).

■ In an effort to blunt Section 6331's definition of levy, Interfirst points to the language in Section 7426(a)(1) stating that an action may be brought "without regard to whether such property has been *surrendered to* or sold by" the IRS. (Emphasis added). Interfirst argues that since a "surrender" is a voluntary act, Section 7426 embraces voluntary as well as forced tax payments. We disagree. As many a general is painfully aware, surrenders are not always voluntary. While a "surrender" may be a voluntary act, it may also be compelled. *See Oxford English Dictionary* 3176 (comp. ed. 1971) (defining surrender as "to yield on demand *or compulsion* ") (emphasis added). Therefore, the presence of the word "surrender" in Section 7426 does not denote that the section

necessarily applies to voluntary tax payments. Indeed, if Interfirst were correct and Section 7426 were meant to apply to voluntary as well as involuntary tax payments, then one would expect that Congress would have referred to the IRS's tax collection activities generally rather than to levies in particular.

■ Of course, Condor's surrender of its accounts receivable was not entirely voluntary. It is safe to say that, in its heart of hearts, if Condor had pitched a penny into the well, this is not what it would have wished for. In fact, Condor decided to surrender its accounts receivable only after the IRS had threatened to file tax liens. We do not consider this form of emotional compulsion, however, to be the type of compulsion that is involved in a levy. If we did, then most tax payments would be levies, since few taxpayers pay taxes purely as an act of free choice; they pay because of the implicit threat of audits, tax liens, and other legal sanctions.

No bright line separates voluntary from involuntary actions. Instead, the two shade into one another along a spectrum. At one extreme is the "ideal type" of unconstrained, purely voluntary action. At the other is coerced action. Between is the range of partly voluntary, partly involuntary action. To determine where an action fits on this spectrum, we must compare it with other related actions.

Here, in the spectrum of government tax-collection activities, Condor's payment was voluntary. It can hardly be said that the government made Condor an offer it couldn't refuse. The government merely threatened to file a tax lien. While the government rarely holds the taxpayer's

---

9. The district court, in holding that a levy did not occur, appears to have relied on the fact that the IRS never filed a "notice of levy." *See* Memorandum Opinion at 4–5 (following *Standard Acceptance Co. v. United States*, 342 F.Supp. 45, 47–48 (N.D.Ill.1972)). We do not believe that any documentary requirement must be met before a "levy" can occur within the meaning of § 7426. As the IRS admits, any forced taking of property—whether by means of a notice of levy or by means of an actual seizure—falls within the scope of § 7426. While the IRS is legally obligated to give the taxpayer notice and an opportunity to refuse to pay before levying upon his property, *Commissioner of Internal Revenue v. Shapiro*, 424 U.S. 614, 622 n. 7, 96 S.Ct. 1062, 1068 n. 7, 47 L.Ed.2d 278 (1976); *Martinez v. United States*, 669 F.2d 568, 569 (9th Cir.1981); 26 U.S.C. § 6331(a), the IRS's failure to meet this statutory prerequisite should not be a means of avoiding suit by aggrieved third parties under § 7426.

arm behind his back or holds a gun to his head, it does have more persuasive means at its disposal for collecting taxes than threatening to file a tax lien. The threat of a tax lien, implicit in every IRS request for payment, does not distinguish this case from the run of the mill tax-collection case. By threatening to file tax liens, the IRS indicated that forcible steps would be taken if Condor did not voluntarily surrender its accounts. Because Condor responded to the IRS's demand, however, the IRS never had to resort to these steps. The threat was merely a "pre-levy" tactic; it did not transform Condor's voluntary payment into a levy. *See In re Carlson*, 580 F.2d 1365, 1367–68 (10th Cir.1978) (distinguishing between "pre-levy administrative processes," including demands for payment, and "forced collections" by means of levies); *Nickerson*, 513 F.2d at 33 (distinguishing between actual and threatened levies). Consequently, Section 7426 does not apply.

▆▆▆ Our conclusion that Interfirst's suit does not fall within the compass of Section 7426 is buttressed by the principle that waivers of sovereign immunity must be strictly construed. *Nickerson*, 513 F.2d at 33 (Section 7426 should be strictly construed). *See generally Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983); *Soriano v. United States*, 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *United States v. Sherwood*, 312 U.S. 584, 590, 61 S.Ct. 767, 771, 85 L.Ed. 1058 (1941); *cf. Atascadero State Hospital v. Scanlon*, — U.S. —, —, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) (Eleventh Amendment waivers of state immunity must be unequivocal). As

Chief Justice Taft stated long ago, "The sovereignty of the United States raises a presumption against its suability, unless it is clearly shown; nor should a court enlarge its liability to suit conferred beyond what the language requires." *Eastern Transportation Co. v. United States*, 272 U.S. 675, 686, 47 S.Ct. 289, 291, 71 L.Ed. 472 (1927). Even if there were some doubt as to the ambit of Section 7426, we would err in favor of preserving the government's immunity.[10] Since Section 7426 does not expressly permit suits such as Interfirst's, where the taxpayer voluntarily surrendered its property to the IRS, this section does not waive the government's immunity in the present case.

B

▆▆▆ Interfirst claims in the alternative that its suit is permitted under the Federal Tort Claim Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674, which waives the federal government's liability in tort. Interfirst argues that because it has asserted a tort claim against the IRS for common law conversion, the FTCA's waiver of immunity is applicable in the present case.[11]

In order to sustain this argument, Interfirst must first overcome a formidable obstacle, namely, 28 U.S.C. § 2680(c), which exempts from the provisions of the FTCA "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty...." On its face, this exception would seem to apply because Interfirst's claim clearly arises "in respect of" the tax collection efforts of the IRS. The governmental action complained of is the collection by the IRS of Condor's taxes through

---

**10.** For this same reason, Interfirst's related argument that we should infer a waiver of immunity under Section 7426 must be rejected. The Supreme Court has often held that waivers of sovereign immunity must be "unequivocally expressed" and must not be inferred. *See, e.g., Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 2701–02, 69 L.Ed.2d 548 (1981); *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *Garcia v. United States*, 666 F.2d 960, 966 (5th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982). This is true even where the plaintiff is an innocent third party, with no

alternative remedy. *See Murray v. United States*, 686 F.2d 1320, 1325 (8th Cir.1982), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983).

**11.** The IRS argues on appeal that Interfirst is barred from bringing this suit under the FTCA since it failed to file an administrative claim pursuant to 28 U.S.C. § 2675. However, this argument is untimely since it was not raised below. *See Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1117 n. 20 (5th Cir.1985).

the acceptance of the Post accounts receivable.

Interfirst advances two arguments why this exemption nevertheless does not apply. First, it claims that Congress intended Section 2680(c) to bar only those suits for which adequate remedies were already available. Since, given our interpretation of 26 U.S.C. § 7426, no other remedy is available to Interfirst, the Bank argues that applying Section 2680(c) would be contrary to Congress's intent. Second, Interfirst claims that Section 2680(c) bars suit only by taxpayers, not by third parties such as itself who are affected by the government's tax collection activities.[12]

We find both of these arguments to be without merit. In interpreting a statute, it is well established that the plain meaning of the language controls, "[a]bsent a clearly expressed legislative intention to the contrary." *Escondido Mutual Water Co. v. La Jolla Indians,* —— U.S. ——, ——, 104 S.Ct. 2105, 2110, 80 L.Ed.2d 753 (1984) (quoting *North Dakota v. United States,* 460 U.S. 300, 312, 103 S.Ct. 1095, 1102, 75 L.Ed.2d 77 (1983)); *see also Tallentire v. Offshore Logistics, Inc.,* 754 F.2d 1274, 1282 (5th Cir.1985). Here, the language of Section 2680(c), insofar as it pertains to this suit, is unambiguous. It exempts from the provisions of the FTCA "[a]ny claim arising in respect of the assessment or collection of *any* tax...." (Emphasis added.) It gives no indication whatsoever that the exemption is limited to claims where an adequate, alternative remedy is available or to claims brought by taxpayers as opposed to third parties. Instead, it specifically applies to *all* tax-related claims.[13] *See Broadway Open Air Theatre v. United States,* 208 F.2d 257, 259 (4th Cir.1953).

Given the clear language of the statute, Interfirst has a heavy burden of proving that Congress did not mean what it said—that, despite the broad language used, Congress intended Section 2680(c) to have only limited applicability. Interfirst presents no such evidence. It relies solely on two sources. One is a footnote in *Kosak v. United States,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984), which states,

> To our knowledge, the only arguably relevant specific statement as to the purpose of § 2680(c) appears in the testimony of Alexander Holtzoff before a subcommittee of the Senate Judiciary Committee. Holtzoff emphasized the adequacy of existing remedies as a justification for the portion of the provision pertaining to the recovery of improperly collected taxes.

*Id.* at —— n. 17, 104 S.Ct. at 1526 n. 17. The other is an article published contemporaneously with the enactment of the FTCA, which emphasized the existence of adequate, alternative remedies as the basis for Section 2680(c). Gottlieb, *The Federal Tort Claim Act—A Statutory Interpretation,* 35 Geo.L.J. 1, 45 (1946). Neither of these sources indicates that Congress intended Section 2680(c) to apply only to

---

**12.** These two arguments are related in that, for taxpayers, an alternative remedy exists to recover improperly collected taxes. Under 28 U.S.C. § 1346(a)(1), a taxpayer can bring suit against the government "for the recovery of any internal-revenue tax alleged to have been erroneously or illegally assessed or collected...." Third parties, in contrast, are limited to challenging the tax collection activities of the IRS under 26 U.S.C. § 7426, which, as discussed above, applies only where the IRS has levied upon the property in question. Thus, limiting 28 U.S.C. § 2680(c) to suits where an alternative remedy exists would be largely equivalent to limiting it to suits by taxpayers, not third parties.

**13.** We do not regard *South Carolina v. Regan,* 465 U.S. 367, 104 S.Ct. 1107, 79 L.Ed.2d 372 (1984), as contradictory. In *Regan,* the Supreme Court held that the Anti-Injunction Act, 26 U.S.C. § 7421(a), was not intended to bar an action where Congress has not provided an adequate, alternative remedy. 465 U.S. at ——, 104 S.Ct. at 1111–14. This conclusion, although contrary to the apparent meaning of the provision's language, depended on a careful analysis of the legislative history of § 7421(a), and is not transferable to 28 U.S.C. § 2680(c). Indeed, subsequent to *Regan,* the Supreme Court held in *Kosak v. United States,* 465 U.S. 848, 104 S.Ct. 1519, 79 L.Ed.2d 860 (1984) that § 2680(c) barred the plaintiff's suit despite the lack of an equally effective alternative remedy. *Id.* at ——, 104 S.Ct. at 1527–28.

claims for which an adequate, alternative remedy existed; they indicate only that the existence of adequate remedies was one factor leading to the adoption of the exemption. Moreover, in *Kosak*, the principal case relied on by Interfirst, the Court ultimately interpreted Section 2680(c) in a manner that it recognized would leave many persons without an "effectual remedy." 465 U.S. at ——, 104 S.Ct. at 1528. The Court, while acknowledging the inequity of denying the plaintiff an effectual remedy, stated that this contention "is properly addressed to Congress, not to this Court." *Id.; see also Murray v. United States*, 686 F.2d 1320, 1325 (8th Cir.1982) (holding that courts should not imply a waiver of sovereign immunity simply because an adequate, alternative remedy does not exist), *cert. denied*, 459 U.S. 1147, 103 S.Ct. 788, 74 L.Ed.2d 994 (1983).

■ In our view, Interfirst's suggested interpretation of Section 2680(c) not only ignores the plain meaning of the words; it also offers too narrow a construction of Congress's intent in enacting the exemption. Section 2680(c) is not merely a bookkeeping device to avoid the confusion of overlapping remedies. Instead, as we stated in *Capozzoli v. Tracey*, 663 F.2d 654 (5th Cir.1981), it reflects "the government's strong interest in protecting the administration of its tax system from the burden of constant litigation." *Id.* at 657; *see also Kosak*, 465 U.S. at ——, 104 S.Ct. at 1526 (one of Congress's principal purposes in creating exemptions to the FTCA was to remove the threat of damage suits); *Dalehite v. United States*, 346 U.S. 15, 27–28, 32, 73 S.Ct. 956, 964, 966, 97 L.Ed. 1427 (1953) (in enacting the FTCA, Congress did not intend to subject the government to liability for acts of a governmental nature or function). This interest would clearly be frustrated were we to limit Section 2680(c) to suits by taxpayers or where an alternative remedy exists.

Finally, with specific regard to Interfirst's argument that Section 2680(c) bars suit only by taxpayers, not by third parties, we note that this argument has been uniformly rejected by the courts. *See Murray*, 686 F.2d at 1324 (exception in Section 2680(c) barred suit by mortgagee where taxpayer was mortgagor); *United States v. Worley*, 213 F.2d 509, 512 (6th Cir.1954) (exception barred suit by taxpayer's wife), *cert. denied*, 348 U.S. 917, 75 S.Ct. 301, 99 L.Ed. 719 (1955); *Broadway Open Air Theatre*, 208 F.2d at 259 (exception barred suit by preferred stockholders where taxpayers were principal officers, directors, and common stockholders of corporation); *Home Indemnity Co. v. Brennan*, 430 F.Supp. 828, 831 (S.D.N.Y.1977) (exception barred suit by contractor's surety where taxpayer was contractor).[14]

■ For these reasons, we hold that Interfirst cannot bring this suit under the FTCA.

### C

Finally, Interfirst urges that if we interpret Section 7426 to apply not to voluntary surrenders of property but only to forced surrenders of property (i.e., to levies), then the statutory scheme is irrational and violates Interfirst's substantive due process rights. On this basis, Interfirst argues that we should infer a constitutional cause of action against the government along the lines developed in *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ The exact nature of Interfirst's claim is somewhat unclear. Although Interfirst speaks of inferring a constitutional cause of action and relies on implied-right-of-action cases, Interfirst does not appear to claim that the IRS violated Interfirst's constitutional rights by accepting Condor's

---

**14.** Adopting Interfirst's view would not only ignore the plain meaning of § 2680(c), but would render 26 U.S.C. § 7426 superfluous, since aggrieved third-party creditors would be able to bring tort claims directly under the FTCA rather than needing to allege a wrongful levy. *Cf. Home Indemnity*, 430 F.Supp. at 831 n. 5 (Congress enacted 26 U.S.C. § 7426 on the belief that third parties did not have adequate remedies at the time).

accounts receivable. Instead, Interfirst's cause of action against the IRS is for common law conversion and wrongful levy. Moreover, even if Interfirst were arguing that it did have an implied constitutional cause of action against the government, this would not overcome the government's sovereign immunity. While some commentators have argued that sovereign immunity should not apply to bar constitutional torts, *see, e.g.,* Dellinger, *Of Rights and Remedies: The Constitution as a Sword,* 85 Harv.L.Rev. 1532, 1556–58 (1972), we have rejected this view. As we stated in *Garcia v. United States,* 666 F.2d 960 (5th Cir.), *cert. denied,* 459 U.S. 832, 103 S.Ct. 73, 74 L.Ed.2d 72 (1982), "The Constitution does not waive the Government's sovereign immunity in a suit for damages.... [S]uit[s] for damages against the United States based on the Constitution [are] not contemplated by *Bivens* and its progeny." *Id.* at 966; *accord American Association of Commodity Traders v. Department of Treasury,* 598 F.2d 1233, 1235 (1st Cir. 1979); *Jaffee v. United States,* 592 F.2d 712, 717–18 (3d Cir.), *cert. denied,* 441 U.S. 961, 99 S.Ct. 2406, 60 L.Ed.2d 1066 (1979); *Duarte v. United States,* 532 F.2d 850, 852 (2d Cir.1976); *cf. United States v. Testan,* 424 U.S. 392, 401–02, 96 S.Ct. 948, 955, 47 L.Ed.2d 114 (1976) ("[T]he basis of the federal claim—whether it be the Constitution, a statute, or a regulation—does not create a cause of action for money damages unless ... that basis 'in itself ... can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained.' ").

Additionally, Interfirst argues that the statutory scheme relating to sovereign immunity is irrational and hence unconstitutional. On this theory, the question is not whether we can infer a cause of action, but rather whether we can infer a waiver of immunity. Or, put in constitutional terms, the question is not whether the IRS violated the Constitution by accepting Condor's accounts receivable, but whether the sovereign immunity doctrine, as applied in this case, is unconstitutional.

Interfirst makes both a specific and a general argument regarding the unconstitutionality of sovereign immunity. Specifically, Interfirst argues that the statutory scheme involved in this case is irrational, since it permits suits by taxpayers, 28 U.S.C. § 1346(a)(1), and by secured creditors whose collateral is involuntarily converted by means of a levy, 26 U.S.C. § 7426, but not by creditors whose collateral is voluntarily surrendered to the IRS by the delinquent taxpayer, 28 U.S.C. § 2680(c). Relying on *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434–36, 102 S.Ct. 1148, 1157–58, 71 L.Ed.2d 265 (1982), and *Martinez v. California,* 444 U.S. 277, 282, 100 S.Ct. 553, 557, 62 L.Ed.2d 481 (1980), Interfirst contends that if the federal government limits its tort liability in a wholly arbitrary and irrational manner, then it violates the Due Process Clause of the Fifth Amendment.

Interfirst's argument raises a number of intriguing issues, among them, whether Interfirst's interest in bringing suit against the government is a form of "property" protected by the Due Process Clause,[15] and, if so, whether an irrational waiver of sovereign immunity should be struck down altogether (in which case the government's underlying immunity would revive), or whether such a waiver should be judicially modified so as not to be irrational. Interfirst cites no cases, nor are we aware of any, where a congressional waiv-

---

**15.** Although the Supreme Court held in *Logan* that the plaintiff's cause of action was a species of property protected by the Due Process Clause of the Fourteenth Amendment, 455 U.S. at 428–29, 102 S.Ct. at 1154, that determination depended on an analysis of state law, and is not necessarily applicable here, where the plaintiff's action is barred not by an irrational procedural requirement, as in *Logan,* but by the doctrine of sovereign immunity. Arguably, individuals do not have a property interest in being able to sue the United States, given the fact that, presumptively, individuals cannot sue the government for damages; they can only bring suit if Congress has expressly waived the government's immunity. It is difficult to see how a congressional waiver of sovereign immunity could arbitrarily deprive a plaintiff of property, since, but for that waiver, the plaintiff would have had no right to sue the government at all.

er of sovereign immunity has been held to be irrational and, on that basis, has been broadened. We note that such a result would be in tension, if not in direct conflict, with the fundamental principle that waivers of sovereign immunity must be expressly stated by Congress and should not be inferred. *Lehman v. Nakshian,* 453 U.S. 156, 161, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980); *United States v. King,* 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969); *see also Soriano v. United States,* 352 U.S. 270, 276–77, 77 S.Ct. 269, 273–74, 1 L.Ed.2d 306 (1957); *cf. Atascadero State Hospital v. Scanlon,* —— U.S. ——, ——, 105 S.Ct. 3142, 3146, 87 L.Ed.2d 171 (1985) (waivers of state immunity under the Eleventh Amendment must be expressly stated).

▆ In the present case, however, we need not resolve these questions. Even if we have the power both to review the rationality of congressional waivers of sovereign immunity and to expand these waivers in order to make them rational, we find that the waivers in question here are rational. In 26 U.S.C. § 7426 and 28 U.S.C. § 2680(c), Congress chose to distinguish between forcible and voluntary collection activities by the IRS. Congress waived sovereign immunity in the limited number of cases where the Government has forcibly levied upon property claimed by a third-party creditor, but did not waive immunity for the vast bulk of cases arising out of the government's voluntary tax collection activities. We do not find anything irrational in this distinction, and therefore reject Interfirst's argument.

More generally, Interfirst contends at length that the doctrine of sovereign immunity, as a whole, is irrational and should be limited by the courts to the greatest extent possible. It invites us to enter into a "dialogue" with Congress by inferring a waiver of sovereign immunity in the present case. *Brief for Appellants* at 47 (quoting Mona-

ghan, *The Supreme Court, 1974 Term—Foreword: Constitutional Common Law,* 89 Harv.L.Rev. 1, 29 (1975)). Interfirst's argument, while forceful, is addressed to the wrong audience. The Supreme Court has repeatedly upheld the doctrine of sovereign immunity, and has held equally often that waivers of sovereign immunity must be "unequivocally expressed," *e.g., Lehman,* 453 U.S. at 161, 101 S.Ct. at 2701; *Mitchell,* 445 U.S. at 538, 100 S.Ct. at 1351; *King,* 395 U.S. at 4, 89 S.Ct. at 1503, even if the application of sovereign immunity results in hardship, *Soriano,* 352 U.S. at 277, 77 S.Ct. at 274. As the Court stated in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), "We are not ready to tamper with these established principles because it might be thought that they should be responsive to a particular conception of enlightened governmental policy." *Id.* at 400, 96 S.Ct. at 954. Since the Supreme Court has declined to enter into a "dialogue" with Congress concerning sovereign immunity, it is not our place to do so. While we appreciate Interfirst's thorough and interesting discussion of the history of sovereign immunity, we can only respond: Ours not to reason why, ours but to do or die.[16]

### III

We recognize that Interfirst is an innocent third party. This is true of many individuals who are injured by the government but who are nevertheless denied relief. The doctrine of sovereign immunity bars suit by the innocent and the guilty alike. The doctrine is often harsh and makes little sense in cases like the one before us here. But it remains the law.

No. 84–1412, APPEAL DISMISSED.

No. 84–1571, AFFIRMED.

---

16. A. Tennyson, *The Charge of the Light Brigade* stanza 2 (1854) ("Theirs not to make reply,/ Theirs not to reason why,/ Theirs but to do and die.").