**Pearl Bei Lei FANG, as the Mother of Freda Fang, decedent, Plaintiff–Appellant,**

v.

**UNITED STATES of America; County of Tulare; Kevin Bohl, individually and as a deputy sheriff/coroner; Toyota Motor Sales, U.S.A., Inc.; Petrel International Co., Ltd., dba Sino Auto Service, Defendants–Appellees.**

Nos. 96–56800, 97–55028.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 5, 1998.

Decided March 31, 1998.

---

Ronald E. Hermanson; Michael G. Nutter, Law Offices of Michael S. Yu, Alhambra, California, for appellant.

Julie Zatz, Assistant United States Attorney, Los Angeles, California; Alan J. Lazarus, Preuss Walker & Shanagher LLP, San Francisco, California, for appellees.

Before: FLETCHER, MAGILL,* and T.G. NELSON, Circuit Judges.

* Honorable Frank J. Magill, Senior United States Circuit Judge for the Eighth Circuit Court of Appeals, sitting by designation.

T.G. NELSON, Circuit Judge:

Plaintiff appeals the district court's grant of summary judgment in favor of the United States which dismissed her claims for lack of subject matter jurisdiction. The court found that the claims challenged discretionary functions as contemplated by 28 U.S.C. § 2680(a), which exempts certain conduct from the limited waiver of sovereign immunity created by the Federal Tort Claims Act, 28 U.S.C. § 1346(b) et seq. ("FTCA"). Plaintiff additionally appeals the district court's dismissal of her remaining state claims pursuant to 28 U.S.C. § 1367(c)(3), which permits a court to decline to exercise jurisdiction over supplemental state claims when all of the claims over which the court had original jurisdiction have been dismissed.

We have jurisdiction under 28 U.S.C. § 1291. We affirm in part and reverse in part.

### I.

On September 3, 1994, Freda Fang ("Fang") was a passenger in a 1988 Toyota Camry travelling through Sequoia National Park. While travelling down a hill in one of the least visited sections of the park, the car's brakes failed. The vehicle left the roadway, proceeded over an embankment, and plunged approximately 210 feet down the side of a mountain with a 45–degree slope. Both rear-seat passengers, including Fang, were ejected from the car during the accident.

Lookout Point Ranger Station was close to the accident scene. Two Level IV[1] Emergency Medical Technicians ("EMTs"), Craig Cavanna and Colleen Boes, were in the Ranger Residence adjacent to the station at the time of the accident and responded immediately. After requesting additional medical personnel and supplies through dispatch, the two EMTs grabbed their emergency medical kits, a radio, and a partially full portable oxygen tank with delivery system and went down the hill.

Upon finding Fang, the EMTs cleared her airway and administered oxygen without attempting to move her. No immediate attempt was made to stabilize her spine. Approximately fifteen minutes after the accident, Fang stopped breathing. Cavanna and Boes, with the assistance of another of the car's passengers, then began to administer cardiopulmonary resuscitation ("CPR").

After the arrival of additional medical support and equipment, Fang was placed in a cervical collar and strapped to a backboard. Then, using climbing ropes, the EMTs transported her up the mountain. This process took approximately fifty-five minutes, during which CPR was continuously administered. Unfortunately, Fang was pronounced dead upon her arrival at the top of the hill. The cause of death was listed as "cervical fracture."

Fang's mother, Pearl Bei Fei Fang ("plaintiff"), subsequently brought this wrongful death action. The suit was initially filed in the California Superior Court against Toyota Motor Sales, U.S.A., Inc. ("TMS"). The United States was not named as a defendant. Subsequently, plaintiff filed suit in the United States District Court for the Central District of California, adding claims against the United States which alleged the negligent failure of National Park Service ("NPS") employees to (1) properly stabilize Fang's spine prior to treatment; (2) administer to Fang proper CPR; (3) carry all of the equipment necessary to Fang's treatment with them to the accident site.

The United States moved for summary judgment, contending that the discretionary function exception to the FTCA deprived the court of subject matter jurisdiction over the claims asserted against it. The district court agreed and granted the motion. Subsequently, the court dismissed the remaining claims, also due to a lack of subject matter jurisdiction, because the claims over which the court had original jurisdiction had now been dismissed. Plaintiff timely, but separately, appealed both the grant of summary judgment and the dismissal of the remaining claims. The two independent appeals were then consolidated into this proceeding.

---

**1.** The National Park Service classifies rescue personnel by levels indicating the extent of their medical training and expertise.

## II.

Whether the United States is immune from liability in an FTCA action is a question of law reviewed *de novo*. *Montes v. United States*, 37 F.3d 1347, 1351 (9th Cir.1994).

A district court's decision whether to retain jurisdiction over supplemental claims when the original federal claims are dismissed is reviewed for an abuse of discretion. *Patel v. Penman*, 103 F.3d 868, 877 (9th Cir.1996), *cert. denied*, — U.S. —, 117 S.Ct. 1845, 137 L.Ed.2d 1048 (1997).

## III.

Plaintiff challenges the district court's disposition of the case on two distinct grounds: (1) the grant of summary judgment in favor of the United States was improper because the claims were not barred by the discretionary function exception to the FTCA's waiver of immunity; and (2) the district court abused its discretion in subsequently dismissing the claims against the remaining defendants. Additionally, defendant TMS has requested that we take judicial notice of several documents in support of its argument that the supplemental claims were properly dismissed. Each of these arguments is addressed in turn below.

### A. *The FTCA and the Discretionary Function Exception*

The FTCA "waived sovereign immunity from suit for certain specified torts of federal employees." *Dalehite v. United States*, 346 U.S. 15, 17, 73 S.Ct. 956, 959, 97 L.Ed. 1427 (1953). Thus, the Federal Government may be held liable for certain torts its agents commit in the course of their employment. 28 U.S.C. § 2674. However, expressly excluded is "[a]ny claim ... based on the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a) ("the discretionary function exception"). Thus, if the claim is based on a discretionary function, the United States remains immune from liability.

### 1. *Determining Whether a Claim is Barred By the Discretionary Function Exception.*

To determine whether a claim is barred by the discretionary function exception, we apply the two-part test announced in *Berkovitz v. United States*, 486 U.S. 531, 536, 108 S.Ct. 1954, 1958–59, 100 L.Ed.2d 531 (1988). First, the conduct at issue must be discretionary, involving an element of judgment or choice. *Id.* This element is not met "when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow" and the employee "has no rightful option but to adhere to the directive." *Id.* If the act is not discretionary, the exception does not apply and the immunity does not attach.

Once it is determined that the act is discretionary, we "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* "Congress wished to prevent judicial 'second guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense*, 467 U.S. 797, 814, 104 S.Ct. 2755, 2765, 81 L.Ed.2d 660 (1984). The primary focus of the second part of the test is on "the nature of the actions taken and on whether they are susceptible to policy analysis." *United States v. Gaubert*, 499 U.S. 315, 325, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991).

Thus, decisions involving the allocation and deployment of limited governmental resources are the type of administrative judgment that the discretionary function exception was designed to immunize from suit. *See, e.g., Kiehn v. United States*, 984 F.2d 1100, 1107 (10th Cir.1993). However, the need to protect the exercise of policy judgment from the spectre of tort liability does not mean that Congress intended a mere medical error or mistake to be similarly shielded. Accordingly, the United States remains immune from liability for lawsuits challenging the distribution of emergency medical equipment throughout a national park when those suits challenge the decision-maker's policy-based judgment. On the oth-

er hand, the United States is *not* immune from claims which challenge the actual administration of medical care by its employees when the claims do not concern actions which are the product of judgment driven by the consideration of competing policy-based choices.

### 2. *NPS Regulations and Protocols Regarding Emergency Rescue Services.*

The Park Service, through the administrators at Sequoia National Park, issued regulations which set forth the location, type, and quantity of the emergency response equipment required to be kept at various sites throughout the Park. The regulations additionally mandate the level of EMT training the personnel stationed at each of these sites must have received. Thus, each station is required to staff EMTs with a certain training level and to house equipment of varying sophistication.

For example, personnel at the Lookout Point station must have received a minimum of Level I training. Although six Level V EMTs are supposed to be stationed within the park at any given time, they are not required to be present at any particular station. EMTs with a minimum of Level IV training are required to be present at two specified stations in each of the three districts within Sequoia and King's Canyon National Parks. Lookout Point is not one of these enumerated stations. Like all other park stations, Lookout Point is required to keep a basic first aid kit. More sophisticated and specialized EMT equipment such as portable oxygen systems, backboards or extrication devices, and traction splints are only required to be maintained at specified sites throughout the park, but not at Lookout Point.

In addition to the staffing and equipment levels set by the regulations, the Park Service established certain protocols which dictate the EMTs' required response to a variety of medical conditions and situations. These protocols relate to EMT activities such as spine stabilization and CPR administration. Depending on an individual EMT's level of training, different protocols may apply.

### B. *The Claims*

■ Our analysis of each of the plaintiff's claims starts with the general proposition that decisions regarding the equipment to be kept at the various stations, and the EMT training level of the persons stationed there, are fully protected by the discretionary function exception to the FTCA. Parks cannot stock every station, no matter how remote, with the full range of emergency equipment made available to all other sites. Therefore, park administrators must exercise their own policy-based judgment and discretion to determine how best to allocate available resources throughout the various park locations.

Those policy considerations, properly implemented, ideally enable appropriately trained EMTs, armed with the necessary medical equipment, to respond efficiently and effectively to the emergency situations which arise within the park. However, once the designated EMTs arrive at an accident scene and begin using the equipment and administering medical care, the policy shield of the discretionary function exception disappears. Whether an EMT properly applies a splint, administers CPR, or transports a patient has nothing to do with the allocational policy considerations discussed above. It has everything to do with the question of whether the medical response team acted negligently in treating the accident victim. This distinction needs to be kept in mind as we discuss the plaintiff's claims concerning the EMTs' response to the accident in which Freda Fang was fatally injured.

### 1. *Stabilization of Fang's Spine.*

■ Plaintiff claims that in the course of their rescue efforts the EMTs failed to properly stabilize Fang's spine before treating her. She argues that the discretionary function exception to the FTCA is not applicable to the spinal immobilization claim because the EMTs' conduct was mandated by applicable Parkmedic Treatment Protocols. We disagree.

While the protocols do dictate, under the heading of "Spinal Immobilization," that Parkmedics should "ALWAYS IMPLEMENT COMPLETE SPINAL IMMOBILI-

ZATION" except in certain enumerated situations related to an assessment of the victim's trauma, and the EMTs did not claim and the evidence does not suggest that the decisions regarding immobilization of Fang's spine had anything to do with their discretionary assessment of Fang's trauma, the protocols cited in plaintiff's brief are expressly applicable only to Level V EMTs. Thus, while the mandatory nature of the spinal immobilization protocols seems clear, the mandate's application to Level IV EMTs is not. We therefore assume that the spinal immobilization was not mandatory in this instance and proceed to the second part of the *Berkovitz* analysis.

Even if the spinal immobilization procedure was not mandated by the protocols, plaintiff claims that under the second part of the *Berkovitz* test, which asks whether the challenged decisions are the type which Congress intended to shield from liability, the discretionary function exception does not apply. We agree.

No social, economic, or political policy is implicated in the decision whether to stabilize the spine of a person who may have suffered a head, neck, or back injury prior to treatment. This is simply an ordinary judgment made by EMTs in applying their training and expertise to an emergency situation. Therefore, we conclude that the district court erred in determining that plaintiff's claim that the EMTs failed to properly stabilize Fang's spine was barred by the discretionary function exception.

2. *The CPR.*

■ Plaintiff additionally claims that the EMTs failed "to render proper CPR to the decedent after she had gone into cardiac arrest." However, as pointed out by the district court, "there is no definition of what constitutes good or bad CPR under the circumstances." Although the protocols provide a skeletal outline of CPR procedure, they do not address the distinction between good and bad technique. The EMTs were left to administer their professional expertise to the best of their abilities, according to their own judgment and the requirements of their patient. No particular course of conduct is clearly mandated sufficient to remove this claim from the discretionary function exception under the first prong of the *Berkovitz* test.

However, like the spinal immobilization claim, the CPR claim is not the type of governmental discretion which Congress wanted to immunize from liability through the discretionary function exception. Competing policy rationales do not dictate or influence this conduct. We therefore conclude that the district court erred in dismissing this claim for lack of jurisdiction.

3. *The Equipment.*

■ Finally, plaintiff claims that the EMTs negligently failed to take a cervical collar and backboard to the accident site. The equipment that plaintiff claims should have been brought to the accident site was not required to be kept at the Lookout Point station. If equipment not required to be maintained at a site is actually there, an injured person could argue that the park personnel were negligent in not using it. Plaintiff cites the testimony of an individual who claimed to have seen a cervical collar at the site but was not certain when. This is not sufficient to create an issue of fact about the actual presence of the equipment at the station on the day of the accident. When other emergency response personnel arrived at the scene, they carried a backboard and cervical collar with them. To the extent that plaintiff is claiming that additional equipment should have been kept at the site, her claim is barred by the discretionary function exception.

C. *Dismissal of the Supplemental State Claims*

After the district court dismissed the claims against the United States, it exercised its discretion and dismissed the remaining supplemental state law claims against TMS and the other defendants. "The district courts may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Because two of the plaintiff's claims against the United States were erroneously dismissed, the reason for dismissing the remaining supplemental claims no longer exists. However, TMS argues that because the state law claims present novel and complex questions of state law, and because the state law claims predominate "drastically" over the claim which conferred original jurisdiction, the state law claims should be dismissed anyway, citing 28 U.S.C. § 1367(c)(1), (2). We disagree. The decision to exercise supplemental jurisdiction is within the discretion of the district court and that court must be given an opportunity to make that decision. We therefore remand the case to the district court where it can determine whether it should retain jurisdiction over the state law claims in light of TMS's alternate arguments.

### D. *Judicial Notice*

TMS requests the court to take judicial notice of both parties' expert reports (exchanged pursuant to Fed.R.Civ.P. 26(a)(2)), plaintiff's original state court complaint, and the order dismissing the state court action. Because each of these documents is relevant only to the decision to dismiss the remaining state law claims, and because the district court must be given a chance to exercise its discretion in light of the panel's disposition of this appeal, it is not necessary for this court to take judicial notice of these documents. The request for judicial notice is therefore denied.

### IV.

The spine stabilization and CPR claims against the United States are not precluded by the discretionary function exception. We therefore REVERSE the district court's grant of summary judgment in favor of the United States on these two claims.[2] The equipment claim, however, is precluded by the exception, and the district court's dismissal of this claim is AFFIRMED. Because the district court's dismissal of the remaining state law claims was based on its erroneous dismissal of all of the claims against the United States, that decision is also REVERSED to give the district court the opportunity to decide whether to retain

2. We express no opinion on the facts underlying these claims or their outcome. We note only the

supplemental jurisdiction over these claims upon remand. Appellee's request for judicial notice is denied.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED. COSTS TO APPELLANT.

existence of issues of fact which preclude summary judgment on this record.