**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SNYDER & ASSOCIATES AQUISITIONS LLC, a California limited liability company; TOTAL TAX PREPARATIONS, INC., a California corporation, <br><br> *Plaintiffs-Appellants*, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br> *Defendant-Appellee.* | No. 15-56011 <br><br> D.C. No. <br> 8:14-cv-01350-CJC-RNB <br><br><br> OPINION |

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted February 7, 2017
Pasadena, California

Filed June 16, 2017

Before: Susan P. Graber, Jay S. Bybee,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen;
Concurrence by Judge Bybee

# SUMMARY[*]

## Tax

The panel reversed the district court's dismissal on immunity grounds of an action brought by tax preparation and refund-advance businesses against the IRS under the Federal Tort Claims Act, and remanded for further proceedings.

As part of a sting operation aimed at catching people filing for fraudulent tax refunds, the IRS enlisted the assistance of plaintiffs' tax preparation and refund-advance businesses. The operation involved using millions of plaintiffs' dollars as bait under the promise of reimbursement, which did not happen, and the revocation of one of plaintiffs' electronic tax filing privileges, which forced plaintiffs into bankruptcy.

The panel held that 28 U.S.C. § 2680(c) does not confer absolute immunity on the IRS, and, construing the facts in a light most favorable to appellees, the sting operation did not "aris[e] in respect of the assessment or collection of any tax."

The panel also declined to accept the IRS's alternative arguments for affirming the district court's judgment. The panel held that § 2680(h) does not bar plaintiffs' claims for negligence, conversion, and failure to restore things wrongfully acquired because plaintiffs did not allege that the IRS obtained their money through deceit. The panel also held

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

that the allegations in plaintiffs' complaint sufficiently stated claims for failure to restore things wrongfully acquired, for conversion, and abuse of process under California law. The panel did not reach the government's argument that § 2680(a)'s discretionary function exception bars plaintiffs' claims and, at the very least, some discovery on this issue is warranted.

Judge Bybee concurred in the judgment. He wrote separately to address his concern that the majority's blanket conclusion—that the IRS was not engaged in "the assessment or collection of any tax" simply because no refunds were due to the subjects of the IRS investigation—is an unduly narrow construction of what constitutes tax assessment and collection under § 2680(c). Judge Bybee agreed that plaintiffs should have an opportunity to show why they can maintain their tort suit against the IRS.

---

## COUNSEL

Jeffrey Adams Robinson (argued) and Gregory E. Robinson, Robinson & Robinson, Irvine, California, for Plaintiffs-Appellants.

Gretchen M. Wolfinger (argued) and Joan I. Oppenheimer, Attorneys; Caroline D. Ciraolo, Acting Assistant Attorney General; Tax Division, Department of Justice, Washington, D.C.; for Defendant-Appellee.

---

**OPINION**

CHRISTEN, Circuit Judge:

In 2010, the Internal Revenue Service set a trap to catch people filing for fraudulent tax refunds.  The IRS enlisted the assistance of plaintiffs' tax preparation and refund-advance businesses.  It warned that refusal to cooperate would interfere with a federal criminal investigation, it used millions of plaintiffs' dollars as bait, and it promised to reimburse them for any losses.  Plaintiffs cooperated, but the IRS never returned their money.  Instead, at the conclusion of the sting operation, the IRS subpoenaed more than 5,000 of plaintiffs' documents to assist with its prosecution efforts and revoked one plaintiff's electronic tax filing privileges—at the beginning of the tax preparation season—forcing both plaintiffs into bankruptcy.

Plaintiffs sued the IRS under the Federal Tort Claims Act (FTCA), alleging several causes of action, but the district court granted the government's motion to dismiss.  The court ruled that the IRS is immune from liability for its conduct because 28 U.S.C. § 2680(c) bars claims against the government "arising in respect of the assessment or collection of any tax."  We disagree.  Because § 2680(c) does not confer absolute immunity on the IRS, and because, construing the facts in the light most favorable to plaintiffs, the IRS's sting operation did not "aris[e] in respect of the assessment or collection of any tax," we reverse the district court's judgment and remand for further proceedings.

# I.  BACKGROUND[1]

## A.  The Tax Fraud Sting

Total Tax Preparation, Inc. (TTP) was a tax return preparation business.  Its affiliate, Snyder & Associates Aquisitions LLC (SAA) made loans to taxpayers who were awaiting income tax refunds.  TTP prepared its clients' federal income tax returns and referred clients who wanted refund advances to SAA.  When SAA loaned money based on anticipated tax refunds, its clients instructed the IRS to send their refund checks to SAA.  Kerry Snyder was TTP's president and SAA's managing member.

In 2010, Nancy Hilton, a tax preparer who worked as an independent contractor, referred several clients to SAA for refund anticipation loans.  When one of her clients tried to cash a check issued by SAA, the bank notified Snyder that Hilton's client was using fake identification.  Snyder asked the bank to hold the check and immediately contacted Hilton.  Hilton admitted to Snyder that she was working with IRS Criminal Investigations Special Agent Matt Daniels in an undercover sting operation, to catch people making fraudulent claims for tax refunds.  Snyder realized that the IRS was unlikely to issue refunds for the fraudulent tax returns filed on behalf of Hilton's clients, and that SAA's ability to collect on its refund anticipation loans was in jeopardy.  Snyder

---

[1] The government filed a facial attack on the court's jurisdiction, based on the four corners of the complaint.  We accept as true all facts alleged in the complaint and draw all reasonable inferences in plaintiffs' favor.  *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

requested that the bank stop payment on all checks SAA had issued to Hilton's clients.

According to the complaint, Agent Daniels contacted Snyder and informed him that stopping payment would interfere with a federal criminal investigation. Agent Daniels asked Snyder to allow the checks to clear the bank, and assured Snyder that SAA would be repaid. When Snyder called an IRS supervisor to confirm Agent Daniels's representations, the supervisor vouched for the sting operation and for Agent Daniels. Snyder authorized SAA to issue new checks to Hilton's clients, and Agent Daniels and another IRS agent made additional assurances that SAA "would be made whole."

TTP and SAA quickly began to experience negative repercussions from their agreement to cooperate with the IRS. First, TTP's and SAA's bank informed them that it was closing their business accounts because of an inquiry the bank made to the IRS about the investigation of TTP's and SAA's clients. Plaintiffs allege that the IRS failed to inform the bank that TTP and SAA were aiding the sting operation at the IRS's request. TTP and SAA incurred $12,777 in bank and attorneys' fees to keep their bank accounts open. The IRS ignored TTP's and SAA's repeated requests for written confirmation of its promise to repay SAA, and also ignored their requests to reimburse the advanced funds and plaintiffs' bank and attorneys' fees.

Plaintiffs allege that the IRS responded to their requests by serving subpoenas for more than 5,000 pages of their tax return and loan records. TTP and SAA produced the subpoenaed documents at significant additional expense. The IRS later notified TTP that it was suspending TTP's ability to

file tax returns electronically through the IRS's "e-filing" system, because fraudulent returns had been filed using TTP's electronic filing identification number.  The letter notifying TTP of the suspension directed all inquiries to Agent Daniels.

The suspension prevented TTP from filing tax returns electronically for clients, just as the 2011 tax preparation season began.  Initially, the suspension put TTP at a significant competitive disadvantage.  But on January 1, 2011, the IRS began requiring all paid tax preparers to file all returns electronically, and at that point, the suspension effectively put TTP out of business.  TTP's failure deprived SAA of its most significant source of referrals, and SAA soon failed as well.  TTP successfully appealed the IRS's suspension of its e-filing privileges, but the damage already had been done.

The complaint alleges that the IRS never issued refunds for Hilton's clients, never repaid the funds Snyder's company advanced for refund anticipation loans, and never compensated TTP and SAA for any of their other losses.

## B.  District Court Proceedings

TTP and SAA submitted an administrative claim to the IRS for $2,608,078,  and later filed suit in the United States District Court for the Central District of California.  They concurrently filed an action in the Court of Federal Claims for

an uncompensated taking and for breach of contract, pursuant to the Tucker Act, 28 U.S.C. § 1491.[2]

In this action, the IRS argued that the district court should dismiss TTP's and SAA's tort claims for four reasons: (1) the lawsuit is barred by 28 U.S.C. § 2680(c), the tax assessment and collection exception to the FTCA; (2) claims based on the IRS's misrepresentations are barred by the provisions of 28 U.S.C. § 2680(h); (3) plaintiffs failed to state a claim for things wrongfully acquired, conversion, or abuse of process under California law; and (4) plaintiffs' suit is barred by 28 U.S.C. § 2680(a), the discretionary function exception to the FTCA.  The district court granted the government's motion and dismissed plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(1).  The court accepted the argument that 28 U.S.C. § 2680(c) shields the IRS from TTP's and SAA's claims.  TTP and SAA timely appealed.

## II.  STANDARD OF REVIEW

We review de novo a district court's decision to grant a motion to dismiss for lack of subject matter jurisdiction. *Lacano Invs., LLC v. Balash*, 765 F.3d 1068, 1071 (9th Cir. 2014).  Because the government's motion was filed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), we accept as true all facts alleged in the complaint and construe them in the light most favorable to plaintiffs, the non-moving party.  *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014) ("The district court resolves a facial attack as it would

---

[2] The Tucker Act grants exclusive jurisdiction to the Court of Federal Claims for actions sounding in contract against the United States, 28 U.S.C. § 1491(a)(1), while the FTCA grants exclusive jurisdiction to federal district courts to hear tort claims, 28 U.S.C. § 1346(b)(1).

a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction."). Under 28 U.S.C. § 1291, we have jurisdiction to review the district court's order.

## III.  DISCUSSION

### A.  TTP's and SAA's Claims Do Not Arise in Respect of the Assessment or Collection of Any Tax.

The FTCA waives the United States' sovereign immunity for tort claims against the federal government in cases where a private individual would have been liable under "the law of the place where the act or omission occurred."  28 U.S.C. § 1346(b)(1).  Section 2680 provides for several exceptions that "severely limit[]" the FTCA's waiver of sovereign immunity. *Morris v. United States*, 521 F.2d 872, 874 (9th Cir. 1975).  "If a plaintiff's tort claim falls within one of the exceptions, the district court lacks subject matter jurisdiction." *Id.*  Among § 2680's several exceptions is § 2680(c), which prevents lawsuits against the federal government for "[a]ny claim arising in respect of the assessment or collection of any tax."

We have "broadly construed" § 2680(c) to encompass actions taken during the scope of the IRS's tax assessment and collection efforts. *Wright v. United States*, 719 F.2d 1032, 1035 (9th Cir. 1983), *abrogated on other grounds as recognized by Gasho v. United States*, 39 F.3d 1420 (9th Cir. 1994).  For example, in *Morris*, we held that 2680(c) barred not just claims based on literal collection activity, but also a taxpayer's claim that IRS agents wrongfully told his creditors

of his purported tax liability during an audit of his business. 521 F.2d at 874–75. Other circuits also have read § 2680(c) expansively. *See Aetna Cas. & Sur. Co. v. United States*, 71 F.3d 475, 478 (2d Cir. 1995) ("We understand the § 2680(c) exception to cover claims arising out of the operation of the government's mechanism for assessing and collecting taxes. The payment of refunds when due is an integral part of that mechanism."); *Capozzoli v. Tracey*, 663 F.2d 654 (5th Cir. 1981) (holding that § 2680(c) barred a lawsuit by taxpayers who alleged that an IRS agent prowled their property and took photos of their residence without permission, during an investigation to determine the extent of damage they claimed as casualty losses on their tax returns).

Section 2680(c) has been read to apply to both civil and criminal investigations into potential tax liability, *see Jones v. United States*, 16 F.3d 979 (8th Cir. 1994), as well as to suits brought against the IRS by third parties who never had any tax liability, *see Perkins v. United States*, 55 F.3d 910 (4th Cir. 1995) (barring a wrongful death claim arising from the death of a miner hired by the IRS to retrieve mining equipment to satisfy a federal tax debt); *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 307 (5th Cir. 1985) ("[Section 2680(c)] gives no indication whatsoever that the exemption is limited . . . to claims brought by taxpayers as opposed to third parties."); *Broadway Open Air Theatre, Inc. v. United States*, 208 F.2d 257, 259 (4th Cir. 1953) (rejecting the plaintiffs' argument that § 2680(c) does not apply when the lawsuit "is unrelated to any alleged tax liability *between the parties to the suit*" (emphasis added)).

Despite § 2680(c)'s expansive reach, it does not grant the IRS absolute immunity. We previously have rejected the invitation to read the statute as encompassing *any* activities

that "might serve as a deterrent that will facilitate the 'assessment or collection' of taxes generally." *See Wright*, 719 F.2d at 1035. Even courts that have applied § 2680(c) to claims that, at first blush, seem attenuated from assessment and collection activities have taken pains to emphasize that they "do not intend to suggest that the government is insulated from tort liability for any and all transgressions committed by IRS employees." *Capozzoli*, 663 F.2d at 658; *see also Perkins*, 55 F.3d at 914 ("[T]he breadth of section 2680(c)'s operation is not unlimited.").

The government argues that its conduct in this case involved the assessment or collection of taxes because it was trying to determine whether taxpayers were claiming bona fide refunds. This argument overlooks our obligation to accept as true the allegations in plaintiffs' complaint. *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) ("We review here a decision granting a motion to dismiss, and therefore must accept as true all the factual allegations in the complaint."). TTP and SAA allege that the IRS already suspected that the individuals under investigation were scam artists who were not entitled to any bona fide refunds. The allegation that the IRS's efforts were aimed at snaring tax cheats cleanly distinguishes this case from the case on which the government relies, *Aetna Casualty & Surety Co.*, 71 F.3d 475. There, Aetna Casualty argued that it was entitled to part of a tax refund that the IRS had paid to a different taxpayer. Aetna sued the government for tortious conversion, *id.* at 477, and the Second Circuit held, unremarkably, that § 2680(c)'s bar of claims concerning tax assessment and collection efforts also bars claims based on "payment of refunds when due," *id.* at 478. Here, *the payment of refunds when due* is not at issue. Construing the alleged facts in plaintiffs' favor, the

complaint includes fraudsters who filed fake returns, so no refunds were due.  Plaintiffs allege that the IRS was not *assessing* the amount of taxes the filers owed, nor was it attempting to *collect* taxes from them.  Instead, it was conducting a sting operation aimed at snaring tax cheaters intent on stealing funds from the United States treasury.

At oral argument, the government identified *Perkins*, 55 F.3d 910, as the case that "comes closest" to the facts of this case.  But *Perkins* lends no support to the government's argument.  It is readily distinguishable because it involved a miner hired by the IRS to retrieve a piece of mining equipment in an attempt to satisfy a federal tax debt.  *See id.* at 912.  The wrongful death claim in *Perkins* easily qualified as a claim arising from the government's tax collection efforts.  *See id.* at 912–13.

The government perfunctorily concedes that the IRS is not entitled to absolute immunity, but goes on to argue that § 2680(c) is intended to bar all lawsuits that "hamper the . . . ability of the IRS to conduct its business," and stretches the definition of § 2680(c) so far that we can discern no limit to its interpretation of the immunity that § 2680(c) affords.  In particular, at oral argument the government refused to recognize any distinction between the facts of this case and a hypothetical scenario in which an IRS agent driving a government car runs a stop sign and hits someone.  Under the government's reading of § 2680(c), its exposure to liability for the on-duty auto accident would fall within § 2680(c)'s exception to the waiver of sovereign immunity.  By offering no real limit to the scope of § 2680(c), the government essentially seeks absolute immunity for the IRS's actions.

The facts alleged in this case describe an elaborate criminal sting operation little different from law enforcement and investigative efforts to catch identity thieves who are stealing bank account information, or cons who are committing health care fraud.  Arguably, when Agent Daniels asked Snyder to front the money for the IRS's sting and cautioned that failing to cooperate would interfere with a criminal investigation, he was not attempting to assess or collect taxes, nor issuing duly owed refunds.  Nor were the targets of the sting operation trying to enjoy tax-free income by fudging on reporting requirements or ginning up fake deductions.    Instead, they were trying to use false identification to claim "refunds" wholly unconnected to payment of taxes.  The IRS convinced Snyder to use SAA's funds as bait to catch the scam artists and, in exchange for his trouble, Snyder lost both of his businesses.

The IRS revoked TTP's e-filing privileges despite knowing that Snyder did the responsible thing by stopping payment on checks SAA advanced to Hilton's clients and that TTP's e-filing identification number was used in connection with fraudulent returns at the request of the IRS.   The government's briefing does not attempt to tie the cancellation of TTP's e-filing privileges to any efforts to assess or collect taxes.   The only possible links we can see between tax assessment and collection and the suspension of the e-filing privileges is that the e-filing system is part of the IRS's general mechanism for collecting taxes, and that the revocation of TTP's e-filing privileges was part of a general effort to deter tax fraud.  Neither fact suffices to save the government's immunity theory.  We have previously rejected an interpretation of § 2680(c) so expansive that it would negate 28 U.S.C. § 2680(h), which expressly allows claims for intentional torts such as malicious prosecution by federal

investigative or law enforcement officers.   *See Wright*, 719 F.2d at 1035–36.

We are aware of no reported appellate decision that has addressed facts similar to those here, and the government offers no persuasive reason why we should be the first circuit to grant such expansive immunity to the IRS.   Granting immunity in this case would allow the FTCA's waiver of sovereign immunity vis-a-vis the IRS to be wholly subsumed in the § 2680(c) exception.   We "read[] no exemptions into the FTCA beyond those provided."   *Id.* at 1036.   Section 2680(c)'s exception to the waiver of sovereign immunity is broad, but it is not unlimited, and the government's all-encompassing view of it cannot be squared with the statutory text.   By its terms, the exception shields only actions taken in connection with efforts to assess or to collect taxes, which were not involved in this case.

## B.  The Government's Alternative Arguments Do Not Provide Grounds for Affirming the District Court's Order.

The government also urges us to affirm the district court's judgment on four alternative grounds that the district court did not reach.   Although "we can affirm the district court on any grounds supported by the record," *Weiser v. United States*, 959 F.2d 146, 147 (9th Cir. 1992), none of the government's arguments merits dismissal at this early stage of litigation.

**1.  Section 2680(h) Does Not Bar the Claims Because They Do Not Rest on Alleged Misrepresentations.**

The government argues that 28 U.S.C. § 2680(h) bars TTP's and SAA's claims for negligence, conversion, and failure to restore things wrongfully acquired because they are premised on misrepresentations by the government. Section 2680(h) establishes an exception to the waiver of sovereign immunity for claims that "aris[e] out of . . . misrepresentation."   This exception includes misrepresentations made willfully and misrepresentations made negligently. *See United States v. Neustadt*, 366 U.S. 696, 702 (1961).

Section 2680(h) bars claims that focus on the government's failure to use due care in communicating information, not actions focused on breach of a different duty. *Block v. Neal*, 460 U.S. 289, 297 (1983).  The plaintiff in *Block* received federal assistance for a house construction loan, and a federal agency undertook to supervise the construction. *Id.* at 291–92.  The agency reported to plaintiff that the construction was satisfactory but, after moving in, she discovered numerous defects. *Id.* at 292.  She sued for negligent supervision under the FTCA. The government argued that § 2680(h) barred her negligence claim. *Id.* at 293–94.  According to the government, plaintiff's claims were based on misrepresentations about the condition of the house. *Id.* at 294.  The Supreme Court held that § 2680(h) did not except the government's waiver of sovereign immunity. *Id.* at 296–97.  It reasoned that the claim for negligent supervision did not "aris[e] out of misrepresentation" within the meaning of § 2680(h) because the plaintiff did not seek to recover on the basis of misstatements made by the government officials.  The duty to

use due care supervising construction was separate from any duty the government had to accurately communicate information to the plaintiff. *Id.* at 297. "Neither the language nor history of the [FTCA] suggest[s] that when one aspect of the [g]overnment's conduct is not actionable under the 'misrepresentation' exception, a claimant is barred from pursuing a distinct claim arising out of other aspects of the [g]overnment's conduct." *Id.* at 298. "Any other interpretation would encourage the [g]overnment to shield itself completely from tort liability by adding misrepresentations to whatever otherwise actionable torts it commits." *Id.*

Here, § 2680(h) does not shield the government because TTP and SAA do not allege that the IRS obtained their money through deceit. TTP and SAA allege that the IRS wrongfully obtained use of their money during the sting operation and failed to return it. As in *Block*, any alleged misstatements by the IRS "are not essential to" plaintiffs' claims, *id.* at 297, which primarily rely on the government's allegedly negligent failure to "take due care to see that Plaintiff[s] were reimbursed and indemnified for any monies which they advanced to persons involved in the sting, or allowed Defendant to use at their request, or which they otherwise lost." Any "partial overlap" between plaintiffs' claims and a potential misrepresentation claim does not bring the former within the scope of § 2680(h)'s exception. *See id.* at 298.

2.  **TTP and SAA Have Stated Claims Under California Law for Failure to Restore Things Wrongfully Acquired and for Conversion.**

The government argues that TTP and SAA failed to state claims for failure to restore things wrongfully acquired and for conversion.  This defense rests on the government's theory that it never had control over property that belonged to TTP or SAA.  But TTP and SAA assert that the IRS coerced Snyder into reissuing checks to the targets of the IRS's investigation.  At this early stage, we cannot determine whether the facts will be as TTP and SAA allege, but if plaintiffs are able to support their allegations, a fact finder might be able to decide that the government exerted sufficient control over their property to support these claims.  *See* Cal. Civ. Code §§ 654, 1712.

California case law is sparse in these areas, but California defines "ownership of a thing" as "the right of one or more persons to possess and use it to the exclusion of others."  *Id.* § 654.  Even if consent is initially given, a plaintiff can state a claim for failure to restore things wrongfully acquired under § 1712 if the plaintiff later withdraws consent.  Similarly, conversion is "the unwarranted interference by defendant with the dominion over the property of the plaintiff from which injury to the latter results."  *Welco Elecs., Inc. v. Mora*, 166 Cal. Rptr. 3d 877, 882 (Ct. App. 2014) (internal quotation marks omitted).  "Money may be the subject of conversion if the claim involves a specific, identifiable sum . . . ."  *Id.*  Here, the complaint alleges specific sums of money that TTP and SAA allowed the IRS to direct.  Although the IRS directed that the money should be allowed to pass into the hands of individuals under investigation rather than to the IRS itself, the allegation is that the IRS

directed the disposition of plaintiffs' funds.  TTP and SAA did not consent to the IRS's permanent use of these sums, and the IRS never reimbursed them.  The complaint's allegations suffice to state a claim for failure to restore things wrongfully acquired and conversion.

### 3.   TTP and SAA Have Stated a Claim for Abuse of Process Under California Law.

The government also argues that TTP and SAA failed to state a claim for abuse of process.  "To establish a cause of action for abuse of process, a plaintiff must plead two essential elements: that the defendant (1) entertained an ulterior motive in using the process and (2) committed a wilful act in a wrongful manner."  *Coleman v. Gulf Ins. Grp.*, 718 P.2d 77, 81 (Cal. 1986).  The government argues that plaintiffs cannot satisfy the second prong because they cannot show that the IRS committed a willful act in a wrongful manner.

"[G]enerally, an action [for abuse of process] lies only where the process is used to obtain an unjustifiable *collateral advantage*.  For this reason, mere vexation or harassment are not recognized as objectives sufficient to give rise to the tort."  *Younger v. Solomon*, 113 Cal. Rptr. 113, 118 (Ct. App. 1974).  TTP and SAA allege that the IRS issued subpoenas and revoked TTP's e-filing privileges to intimidate them and cause them to drop claims for a return of their funds.  If TTP and SAA had dropped their claims, the IRS would have obtained a collateral advantage—unchallenged conversion of TTP's and SAA's money.  These allegations easily amount to more than "mere vexation or harassment" and survive the government's motion to dismiss.

4. **We Do Not Reach the Government's Argument That § 2680(a)'s Discretionary Function Exception Bars the Claims.**

The government further argues that, because the alleged conduct involved the exercise of a discretionary function, 28 U.S.C. § 2680(a) bars TTP's and SAA's claims.  Section 2680(a) excepts from the FTCA "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the [g]overnment, whether or not the discretion involved be abused."  The discretionary function exception involves a two-part test.  *Alfrey v. United States*, 276 F.3d 557, 561 (9th Cir. 2002).  First, we ask "whether the challenged conduct is discretionary, that is, whether it 'involv[es] an element of judgment or choice.'" *Id.* (alteration in original) (quoting *Fang v. United States*, 140 F.3d 1238, 1241 (9th Cir. 1998)).  This prong "is not met 'when a federal statute, regulation or policy specifically prescribes a course of action for an employee to follow.'"  *Id.* (quoting *Fang*, 140 F.3d at 1241)).  Second, we ask "whether that judgment is of the kind that the discretionary function exception was designed to shield."  *Id.* (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).

TTP and SAA argue that the Federal Rules of Civil Procedure require that they have a chance to conduct discovery on what statutes, regulations, or policies govern an IRS agent's use of private property in the course of a tax fraud investigation.  We agree.  The government's unsupported assertion that it had unfettered discretion to commandeer TTP's and SAA's funds is not sufficient.  Depending on what discovery yields, the government may be unable to satisfy the first prong of the test for the

discretionary function exception.  At the very least, some discovery on this issue is warranted.  *See* Fed. R. Civ. P. 56(d).

## IV.  CONCLUSION

We reverse the district court's order granting the motion to dismiss and remand for further proceedings in accordance with this opinion.

Appellee shall bear costs on appeal.

**REVERSED and REMANDED.**

BYBEE, Circuit Judge, concurring in the judgment:

I am sympathetic to the majority's resolution of this case and ultimately agree that, on the record before us, we should reverse the district court's dismissal and remand for further proceedings.  I write separately to address my concern with the majority's blanket conclusion that the Internal Revenue Service (IRS) was not engaged in "the assessment or collection of any tax," 28 U.S.C. § 2680(c), simply because "no refunds were due" to the subjects of the IRS investigation in this case, Maj. Op. at 11–12.  In my opinion, that is an unduly narrow construction of § 2680(c).  But I agree that Plaintiffs should have an opportunity to show why they can maintain their tort suit against the IRS.

The Federal Torts Claims Act (FTCA) waives the United States' sovereign immunity for tort claims alleging "money damages . . . for injury or loss of property . . . caused by the

negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." *Id.* § 1346(b)(1). This waiver, however, is "severely limited" by exceptions listed in § 2680. *Morris v. United States*, 521 F.2d 872, 874 (9th Cir. 1975). Relevant here is the exception in § 2680(c) for "[a]ny claim arising in respect of the assessment or collection of any tax."

The FTCA does not define tax "assessment" or "collection." But the Internal Revenue Code defines the scope of the IRS's assessment and collection authority. Section 6201, entitled "Assessment authority," explains that the IRS "is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, additions to the tax, and assessable penalties) imposed by this title." 26 U.S.C. § 6201(a). An assessment is "made by recording the liability of the taxpayer in the office of the Secretary in accordance with rules or regulations prescribed by the Secretary." 26 U.S.C. § 6203. Section 6301, entitled "Collection authority," simply provides that "[t]he Secretary shall collect the taxes imposed by the internal revenue laws." Thus, in a literal sense, a tax "assessment" is a recorded determination of tax liability. And a tax "collection" is an effort to obtain a tax liability. As explained below, however, we have not limited the scope of § 2680(c) to literal assessment or collection.

We have addressed the scope of § 2680(c) on only two occasions. In *Morris*, we interpreted the phrase "the assessment or collection of any tax" to encompass tax investigations and audits. 521 F.2d at 874. There, the IRS harassed and intimidated Morris and his wife during the investigation and, on several occasions, unlawfully seized

their property.  *Id.*  The IRS also told Morris's creditors that Morris had a large tax liability and would be insolvent as a result.  *Id.*  At the conclusion of its investigation, the IRS determined that Morris had no outstanding tax liability and returned over $6000 in overpaid taxes.  *Id.*  Morris and his wife brought an action under the FTCA.  We concluded:

> Even assuming *arguendo* that the Internal Revenue agents' collection activity was beyond the normal scope of authority and amounted to tortious conduct, we find that the claim falls squarely within the exempted group of tort claims arising out of tax collection efforts.
>
> The alleged conduct of the IRS agents, if true, would be deplorable; nevertheless, the district court lacked subject matter jurisdiction over the claims against them.

*Id.* at 874 (citations omitted).  The takeaway from *Morris* is that § 2680(c) covers more than literal tax assessment or collection; it also covers the IRS's efforts to investigate potential tax liability.  This holding is in harmony with the IRS's assessment authority under 26 U.S.C. § 6201(a), which includes the authority not only to assess taxes in a literal sense (i.e. record a tax liability) but also the authority to make "inquiries" and "determinations" regarding any taxes imposed in the Internal Revenue Code.

Eight years after *Morris*, we decided *Wright v. United States*, 719 F.2d 1032 (9th Cir. 1983).  Wright had been indicted for failure to file tax returns and for making false statements in his returns.  *Id.* at 1033.  The government

eventually dismissed the indictments, and Wright filed an FTCA action alleging that the indictments constituted malicious prosecution. *Id.* The government argued that the indictments were part of "the assessment or collection" of taxes and were thus barred by § 2680(c). *Id.* at 1035. We noted that the indictments were not collection efforts "[i]n the literal sense" because the prosecution "was an attempt to impose criminal penalties on Wright, not to collect taxes from him." *Id.* But we also acknowledged that § 2680(c) "has been broadly construed" and that it would "not strain precedent to hold that . . . prosecuting Wright fell within the exception because the prosecution might serve as a deterrent that will facilitate the 'assessment or collection' of taxes generally." *Id.* Ultimately, however, we rejected that broad construction in light of § 2680(h), which expressly permits claims for malicious prosecution by federal law enforcement officers.[1] There was no dispute that the IRS agent in question

---

[1] 28 U.S.C. § 2680(h) excepts from the United States' waiver of sovereign immunity

> [a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights: *Provided*, That, with regard to acts or omissions of investigative or law enforcement officers of the United States Government, the provisions of this chapter and section 1346(b) of this title shall apply to any claim arising, on or after the date of the enactment of this proviso, out of assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution. For the purpose of this subsection, "investigative or law enforcement officer" means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.

was a federal law enforcement officer, *id.* at 1034, and we saw nothing in § 2680(h) suggesting "that malicious tax prosecutions are to be treated differently from other malicious prosecutions," *id.* at 1036.   To avoid encroaching on § 2680(h), we interpreted § 2680(c) "not to apply to [the IRS agent's] actions in carrying out the criminal prosecution against plaintiff, insofar as those acts are alleged to constitute malicious prosecution." *Id.* Construing § 2680(c) in this manner left both § 2680(c) and § 2680(h) "with a great deal of room to operate." *Id.*

Since deciding *Wright*, we have not had occasion to further opine on what constitutes "the assessment or collection of any tax."[2]   Other circuits, however, have held that a wide array of IRS conduct falls within § 2680(c)'s purview.   To say that the statute has been given a broad construction is an understatement.   *See*, *e.g.*, *Perkins v.*

---

[2] In *Smith v. Brady*, 972 F.2d 1095 (9th Cir. 1992), we compared § 2680(c) to 26 U.S.C. § 7430.   Section 2680(c) was not at issue in that case, but we observed that cases interpreting § 2680(c) "show that a broad range of activity by the IRS arises in connection with the determination of tax liability." *Id.* at 1100.   In *Gasho v. United States*, 39 F.3d 1420 (9th Cir. 1994), we addressed § 2680(c)'s exemption for liability from "any claim arising in respect of . . . the detention of any goods or merchandise by any officer of customs."   Relying on *Wright*, the plaintiffs in *Gasho* argued that § 2680(h), which permits claims for various intentional torts committed by federal law enforcement officers, amended the § 2680(c) bar.   We rejected the notion that § 2680(h) in any way *amended* § 2680(c) so as to waive immunity that would otherwise apply.   We held that *Wright* simply requires "the United States to first demonstrate that the Customs or IRS agent's tortious conduct falls within the scope of activities exempted in § 2680(c).   If such a showing is made, the claim is barred." *Id.* at 1433.   Because we construed the malicious prosecution in *Wright* not to constitute an assessment or a collection of a tax "within the strict meaning of those words," the government had failed to demonstrate that its conduct fell within the scope of § 2680(c). *Id.*

*United States*, 55 F.3d 910, 913 (4th Cir. 1995) ("The opinions interpreting section 2680(c) clarify that the exemption applies not only to actions by persons against whom the tax collection efforts are directed, but also to actions by third parties injured by tax collection efforts."); *Interfirst Bank Dallas, N.A. v. United States*, 769 F.2d 299, 307 (5th Cir. 1985) ("[Section 2680(c)] gives no indication whatsoever that the exemption is limited to claims . . . brought by taxpayers as opposed to third parties.  Instead, it specifically applies to *all* tax-related claims."); *Capozzoli v. Tracey*, 663 F.2d 654, 658 (5th Cir. 1981) ("This language is broad enough to encompass any activities of an IRS agent even remotely related to his or her official duties."); *Broadway Open Air Theatre v. United States*, 208 F.2d 257, 259 (4th Cir. 1953) (rejecting an argument that § 2680(c) does not apply to conduct "unrelated to any alleged tax liability between the parties to the suit").  As relevant to this appeal, the Eighth Circuit held in *Jones v. United States* that § 2680(c) encompasses both civil and criminal tax investigations.  *See* 16 F.3d 979, 980–81 (8th Cir. 1994).  In *Jones*, the court dismissed an FTCA claim arising out of an investigation "that at all relevant times . . . was in a criminal status, as opposed to being an administrative or civil matter." *Id.* at 980.  It did so in spite of the fact that the investigation did not result in "any attempted assessment or collection of taxes or penalties."  *Id.*  According to the court, whether an investigation is civil or criminal in nature "makes no difference" to § 2680(c)'s bar.  *Id.*; *see also Perkins*, 55 F.3d at 916 (summarily rejecting an argument that § 2680(c) does not apply when the IRS is "conducting a criminal investigation rather than collecting taxes" as having "no basis in law").

The majority does not dispute *Jones*'s conclusion that § 2680(c) applies to criminal tax investigations as well as civil tax investigations and, I think, properly so. *See* Maj. Op. at 10.   In a different context, the Supreme Court has commented on "the interrelated criminal/civil nature of a tax fraud inquiry." *United States v. LaSalle Nat'l Bank*, 437 U.S. 298, 314 (1978); *see also id.* at 314 n.15.   In *LaSalle*, the Court addressed the scope of the IRS's summons authority under 26 U.S.C. § 7602. *Id.* at 305.  That provision has since been modified, but at the time it only permitted the IRS to issue summonses in connection with civil, not criminal, investigations. *See id.* at 301 n.3.  The question before the Court was whether the statute authorized a summons issued solely for the purpose of building a criminal case. *Id.* at 307–08.  The Court reasoned that "[f]or a fraud investigation to be solely criminal in nature would require an extraordinary departure from the normally inseparable goals of examining whether the basis exists for criminal charges and for the assessment of civil penalties." *Id.* at 314.  Committing tax fraud may subject perpetrators to both criminal and civil penalties. *Id.* at 308; *see also* 26 U.S.C. § 7206 (subjecting fraudulent taxpayers to criminal penalties of imprisonment, fines up to $100,000 ($500,000 for corporations), or both, plus costs of prosecution); *id.* § 6663(a) (adding seventy-five percent of any underpayment to a taxpayers's tax liability when the underpayment is due to fraud).   Those civil penalties are, by statute, considered part of the taxpayer's tax liability. *See* 26 U.S.C. § 6201 ("The Secretary is authorized and required to make the inquiries, determinations, and assessments of all taxes (including interest, additional amounts, *additions to the tax, and assessable penalties*) imposed by this title . . . ." (emphasis added)).   It is thus typically the case that the IRS, when trying to determine criminal liability, is also trying to determine whether any civil

penalties should be added to the taxpayer's liability.  Not only does the IRS have an interest in assessing civil penalties against fraudulent taxpayers, it also has an interest in collecting the unpaid taxes.   And "[t]he institutional responsibility of the [IRS] to calculate and to collect civil fraud penalties and fraudulently reported or unreported taxes is not necessarily overturned by a single agent who attempts to build a criminal case." *LaSalle*, 437 U.S. at 314.  It is rarely the case that the IRS "abandon[s] . . . the pursuit of civil tax determination or collection" simply because it also chooses to investigate potential tax crimes. *See id.* at 314, 318.

*LaSalle* lends support to our conclusion in *Wright* that a purely criminal prosecution does not constitute tax assessment or collection, although *LaSalle* also suggests that a purely criminal tax investigation will be rare.[3]  "Only [upon the recommendation of prosecution] do the criminal and civil aspects of a tax fraud case begin to diverge."  *Id.* at 311.

---

[3] There is a good reason for this.  Criminal tax evasion is a specific intent crime.  In such cases, the government bears a very high burden because it must show that the defendant "willfully attempt[ed] in any manner to evade or defeat any tax." 26 U.S.C. § 7201.  In this context, "willfullness" means the government must "prove that the law imposed a duty on the defendant, that the defendant knew of this duty, and the he voluntarily and intentionally violated that duty." *Cheek v. United States*, 498 U.S. 192, 201 (1991).  The Court has long "interpreted the statutory term 'willfully' as used in the federal criminal tax statutes as carving out an exception to the traditional rule [that every person is presumed to know the law].  This special treatment of criminal tax offenses is largely due to the complexity of the tax laws." *Id.* at 200.  The burden of proof in tax prosecutions is thus greater than it is for other crimes, even where the government must show the defendant acted "willfully." *See Bryan v. United States*, 524 U.S. 184, 193–95 (1998).  Because of the high burden of proof, most tax investigations will have only civil consequences.

Although the IRS "does not sacrifice its interest in unpaid taxes just because a criminal prosecution begins," *id.* at 311–12, the imposition of criminal penalties does nothing to further the IRS's interest in collecting or assessing taxes aside from the deterrent effect on the taxpayer and others, *see Wright*, 719 F.2d at 1035. The investigation preceding prosecution, however, generally has both civil and criminal motives even when the investigation is "in a criminal status" "at all relevant times." *See Jones*, 16 F.3d at 980. But the Court recognized in *LaSalle* that there is at least the possibility that the IRS could carry out an investigation strictly for the purpose of pressing criminal charges. 437 U.S. at 318. If it turns out that the IRS has "abandon[ed] in an institutional sense . . . the pursuit of civil tax determination or collection," *id.*, then it is no longer carrying out its tax assessment or collection functions and falls outside the scope of § 2680(c).

Here, the Government argues that its investigation had a civil component because it was trying to determine whether to pay the taxpayers' claimed refunds. Plaintiffs counter that the sole purpose of the sting operation was to catch criminals that the IRS already suspected were committing tax fraud. In all likelihood, the investigation had both civil and criminal components. *See id.* at 314. Specifically, the IRS investigation was likely an effort to prevent the payment of fraudulent returns and impose civil and criminal penalties, with the civil penalties making up part of the taxpayer's tax liability. *See* 26 U.S.C. § 6201. It also seems likely that the IRS would go after any unpaid taxes the subjects of the investigation may owe. But the complaint is ambiguous as to the nature of the investigation. It alleges that the investigation was designed "to identify instances of fraudulent tax returns," which lends support to the IRS's

contention that it was trying to determine whether it had to pay the refunds.  The complaint also alleges that the investigation was an effort to "catch criminals attempting to defraud the IRS."  This allegation highlights the criminal nature of the IRS's investigation, and, construed narrowly in Plaintiffs' favor, lends support to the majority's conclusion that the IRS's efforts were solely "aimed at snaring tax cheats." Maj. Op. at 11.  Although I think the complaint fairly suggests both civil and criminal motives, I see no harm in permitting discovery for the purpose of clarifying the nature of the IRS investigation.

The majority reasons that "the targets of the sting operation [were not] trying to enjoy tax-free income by fudging on reporting requirements or ginning up fake deductions" but "were trying to use false identification to claim 'refunds' wholly unconnected to payment of taxes." *Id.* at 13.  I have two responses.  First, the real crux of my disagreement with the majority is its apparent conclusion that IRS efforts to prevent the payment of fraudulently filed refunds do not fall within the broad array of the IRS's assessment and collection activities. *See id.* at 12 ("Plaintiffs allege that the IRS was not *assessing* the amount of taxes the filers owed, nor was it attempting to *collect* taxes from them. Instead, it was conducting a sting operation aimed at snaring tax cheaters intent on stealing funds from the United States treasury. ").  The majority distinguishes this case from *Aetna Casualty & Surety Co. v. United States*, 71 F.3d 475 (2d Cir. 1995), which reasoned that "[t]he payment of refunds when due is an integral part of" the "mechanism for assessing and collecting taxes" and thus within § 2680(c)'s purview. *Id.* at 478.  The majority concludes that "*the payment of refunds when due* is not at issue" because "the complaint includes fraudsters who filed fake returns, so no refunds were due."

Maj. Op. at 11–12.  I do not read *Aetna* as drawing a line between payment and nonpayment of refunds.  Rather, the Second Circuit in *Aetna* was trying to avoid a narrow construction of § 2680(c) that excluded refunds from assessment and collection efforts.  *Id.* at 478–79.  To conclude, as the proposed majority does, that *paying* duly owed refunds falls under § 2680(c) while *denying* refunds does not strikes me as unduly narrow.  It puts the cart before the horse.  If discovery reveals that the IRS was, as it asserts, attempting to determine whether the refund claims at issue were bona fide, then it cannot be the case that the IRS *is* assessing taxes when it turns out the claims were bona fide but *is not* when it turns out the claims were bogus.  The "[a]ssessment authority" given to the IRS in 26 U.S.C. § 6201 includes the ability to make "inquiries, determinations, and assessments of all taxes."  An inquiry into the validity of a taxpayers' Form 1040 falls squarely within that authority.

Second, even assuming we can distinguish between cheating on the taxes we pay and cheating on the refunds we claim, the majority's conclusion that the IRS "was not attempting to assess or collect taxes" is, at best, premature. Maj. Op. at 13.  The complaint simply alleges that the IRS was attempting to detect instances of fraudulent tax returns. There are various ways a taxpayer could commit fraud on a tax return, including fudging numbers or claiming fake deductions.  The complaint gives an example of one of the investigated taxpayers using a fake ID, but it is far from clear what kind of fraud the other subjects of the investigation might have committed.  If discovery reveals that some of the investigated taxpayers were fudging numbers, then, based on the majority's own reasoning, the majority would agree that the investigation constituted tax assessment.  But, in any event, I'm not sure why it matters whether the fraud involved

fake IDs or fudged numbers.  The IRS's interest in not paying a fraudulently claimed return is the same regardless of the type of fraud at issue.  And a taxpayer who has borrowed an ID from someone else or who has claimed false deductions is still liable for any unpaid taxes.

In short, the majority's conclusion that the IRS was not engaged in tax assessment or collection rests on an unduly narrow construction of what constitutes tax assessment and collection.  I nonetheless agree that we should reverse the district court on the record before us.  Plaintiffs should at least get the chance to show that the IRS investigation had no other purpose than to impose criminal penalties.[4]

* * *

If the subjects of the IRS investigation in question were to bring tort claims against the IRS for conduct related to the investigation into the validity of their claimed returns, I wonder whether any of us would have given pause to the district court's conclusion that § 2680(c) bars such claims. What makes this case different from all of the other cases applying § 2680(c) to bar claims is not so much the nature of the IRS investigation, but the fact that Plaintiffs are not the taxpayers at issue and are innocent third parties.  We cannot, however, distinguish this case on that ground without doing damage to the statute's text, *see* § 2680(c) ("The provisions of this chapter and section 1346(b) of this title shall not apply to . . . (c) *Any* claim arising in respect of the assessment or collection of any tax . . . ." (emphasis added)), or creating an overt circuit split, *see*, *e.g.*, *Interfirst Bank Dallas, N.A.*,

---

[4] Based on the record before us, I would not reach the Government's alternative arguments for affirming the dismissal of Plaintiffs' claims.

769 F.2d at 307 ("[Section 2680(c)] gives no indication whatsoever that the exemption is limited to claims . . . brought by taxpayers as opposed to third parties."). That said, I think that our case law fairly gives Plaintiffs a chance to show that the IRS investigation was purely criminal. But I can't agree with the majority's conclusion that IRS investigations into the validity of a claimed refund fall outside the scope of § 2680(c).

Finally, it is worth emphasizing what Plaintiffs are *not* alleging in this lawsuit. They are not alleging that the IRS breached an express or implied contract to make Plaintiffs whole. Nor are they alleging that the failure to repay Plaintiffs constituted a government taking. These claims would fall under the Tucker Act, which specifically waives immunity for breach of contract and takings claims. 28 U.S.C. § 1491(a)(1). Plaintiffs have raised these claims before the Court of Federal Claims. Without passing on the merits of that lawsuit, breach of contract and takings would seem to be the more natural way of styling Plaintiffs' claims. Here, however, Plaintiffs' tort claims arose during the course of an IRS investigation. Further discovery may confirm the Government's argument that Plaintiffs' claims arose "in respect of the assessment or collection of any tax" and are thus barred by § 2680(c), but the Plaintiffs should get the opportunity to show otherwise. I don't think we can conclude that the Government is wrong on this record.

I concur in the judgment only.